**DAVIS, Director General of Railroads, v. STAMFORD MILL & ELEVATOR CO. et al. (No. 10506.)**

(Court of Civil Appeals of Texas. Fort Worth. March 8, 1924. Rehearing Denied April 12, 1924.)

1. **Carriers ⬅94(2)—Buyer's petition against railroad for failure to divert car held not demurrable for failure to allege whether contract for purchase of goods was oral or written.**

Where goods for shipment of which to a certain point a bill of lading had been issued were sold under a contract requiring the car to be diverted to other point, buyer's petition, in his action against the railroad to recover demurrage, reconsignment charges, and war tax paid on the railroad's failure to divert the car to other point, alleging the number of the car containing the goods, the issuance of the original bill of lading, and the substitution of another bill of lading binding the railroad to transport the car to other point, held not subject to general demurrer for failure to allege whether the contract for the purchase of the goods was oral or written.

2. **Carriers ⬅51—"Bill of lading" defined.**

A "bill of lading" is a memorandum or acknowledgment in writing, signed by the carrier, binding the carrier to transport goods as therein directed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bill of Lading.]

3. **Contracts ⬅333(2)—Pleading not demurrable for failure to state whether contract oral or written, where such fact not essential to cause of action.**

A pleading is not demurrable because it fails to state whether the contract sued on is oral or written, where such fact is not essential to the cause of action.

4. **Carriers ⬅94(2)—Petition to recover demurrage, reconsignment charges, and war tax paid because of failure to divert car pursuant to bill of lading, held not demurrable for failure to allege to whom and where payment was made.**

In buyer's action against railroad to recover demurrage, reconsignment charges, and war tax, which buyer was required to pay because railroad failed to divert car pursuant to bill of lading substituted for that originally issued providing for the transportation of the car to the point to which the contract for purchase of the wheat required the seller to divert the car, petition held not subject to general demurrer for failure to allege to whom and at what point the demurrage, reconsignment charges, and war tax were paid.

5. **Carriers ⬅94(2)—Petition to recover demurrage, reconsignment charges, and war tax paid because of failure to divert car pursuant to bill of lading held not demurrable for failure to allege railroad's negligence.**

In action by buyer of carload of wheat against railroad to recover demurrage, reconsignment charges, and war tax, which buyer was required to pay because of railroad's failure to divert the car to point other than that stated in the original bill of lading pursuant to bill of lading substituted therefor, on buyer's purchase of wheat after issuance of original bill of lading, petition alleging that railroad did not transport the car as obligated to do under the substituted bill of lading, but transported it to the point to which the wheat was originally shipped, and that buyer was required to pay such expenses through the fault and negligence of the railroad in transporting the wheat to such point instead of the point to which it should have been diverted and in delaying the car at such point, held sufficient as against general demurrer, notwithstanding failure to allege railroad's negligence, in view of Rev. St. art. 6554, placing burden on railroad to show that delay was not negligent.

6. **Carriers ⬅94(2)—Variance as to date of contract for purchase of carload of wheat held not fatal in buyer's action against railroad for demurrage, reconsignment charges, and war tax paid on account of failure to divert shipment.**

In action by buyer of carload of wheat under a contract requiring seller to divert the

car to a point other than that to which it had been shipped, against railroad for demurrage, reconsignment charges, and war tax, which buyer was required to pay because of delay of car at point to which it was originally shipped, to which railroad had moved the car in violation of bill of lading issued in substitution for that originally issued, variance between allegation as to date on which buyer's contract with seller was entered into and proof as to such date *held* not vital, in the absence of a showing that the railroad was injured by reason thereof.

**7. Carriers  ⊕⇒94(3)—Testimony as to payment of demurrage, reconsignment charges, and war tax to joint agent of railroads at certain point held admissible in suit for diversion of shipment.**

In action against Director General of Railroads to recover demurrage, war tax, and reconsignment charges which plaintiff was required to pay because of transportation of car to point other than that stated in the bill of lading, testimony that the demurrage, reconsignment charges, and war tax were paid to the joint agent of railroads at a certain point *held* admissible, since payment to the joint agent was in effect payment to the Director General.

**8. Carriers  ⊕⇒94(4)—Interest properly allowed on claim in rendering judgment against Director General or agent for failure to divert car.**

Under Federal Control Act March 21, 1918, § 10 (U. S. Comp. St. 1918, U S. Comp. St. Ann Supp. 1919, § 3115¾j), Transportation Act Feb. 28, 1920 (U S. Comp St. Ann. Supp. 1923, § 10071¼ et seq.), and Vernon's Sayles' Ann. Civ St. 1914, art. 4981, it was proper in rendering a judgment against the Director General of Railroads or the Agent designated by the President, for demurrage, reconsignment charges, and war tax, which the plaintiff was required to pay because of delay of car at point to which it was transported other than that specified in bill of lading, to allow interest on the claim.

**9. Constitutional law  ⊕⇒315—Refusal to allow interest on claim where not denied by statute would constitute denial of due process.**

In the absence of some statutory denial of the right to recover interest on a claim against the Director General of Railroads for money paid for demurrage, reconsignment charges, and war tax, the refusal to allow interest would constitute the denial of due process.

Appeal from District Court, Haskell County; W. R. Chapman, Judge.

Action by the Stamford Mill & Elevator Company and others against James C. Davis, Director General of Railroads, and others. From a judgment for plaintiff against the named defendant, and judgment in favor of the unnamed defendants, the named defendant appeals. Affirmed.

Ratliff & Ratliff, of Haskell, for appellant.
Davenport & Hardwick, of Stamford, for appellees.

BUCK, J. The Stamford Mill & Elevator Company sued A. G. Macon and J. P. Macon, constituting the firm of Macon Bros. and doing business at the town of Rochester, Tex., also James C. Davis, Director or Agent of Railroads. The plaintiff alleged that it had purchased from Macon Bros. a carload of wheat, then en route from Rochester to Fort Worth; that the plaintiff desired that said wheat be delivered at Galveston, and that Macon Bros. promised to divert and ship said car to Galveston; that defendant Macon Bros. did not properly divert said car, and that on about December 27, 1919, over four months after the contract of purchase had been made, and the promise made by Macon Bros. to immediately divert said shipment, billed to Fort Worth, to Galveston, that the plaintiff learned that said car was then at Fort Worth, and that he had to pay demurrage to the amount of $483, $5 reconsignment charge, and $19.94 war tax on the demurrage and reconsignment charges mentioned above; that all of said expenses were necessary to be paid and had to be paid by the plaintiff in order to have said car moved on to Galveston; that all of said expenses were the direct and proximate result of the defendants Macon Bros.' failure to properly divert and bill said car to Galveston.

In the alternative, plaintiffs alleged that if they had been mistaken as to the defendants Macon Bros. having been at fault as previously alleged, then that the defendants Macon Bros. did divert said car to Galveston, and did receive from the Kansas City, Mexico & Orient Railway Company of Texas, on which Rochester is located, a bill of lading showing that said car had been diverted properly to Galveston, and that said railway company did agree with said Macon Bros. to safely transport and carry said car of wheat in consideration of the freight being paid, which was paid. Hence, they alleged that James C. Davis, as Agent of Railroads, was liable for the amounts alleged to have been paid out by reason of the delay, with interest thereon.

From a judgment for the plaintiff as against James C. Davis, Director General of Railroads, in the sum of $654.20, with interest from the date of the judgment at the rate of 6 per cent. per annum and costs of suit, and a judgment in favor of the Macon Bros., James C. Davis, as "Agent of the President of the United States for the purpose of winding up the affairs of the United States Railroad Administration," has appealed.

[1, 2] The first proposition directed against the validity of the judgment below is that the trial court erred in overruling the general demurrer of James C. Davis to the plaintiffs' petition, on the ground that the petition failed to allege whether the contract

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

alleged to have been made with Macon Bros. for the purchase of the car of wheat in question, on August 4, 1919, was oral or written. The allegations alleged the number of the car containing the wheat purchased by the plaintiff from Macon Bros., and alleged that a bill of lading had been given by the Kansas City Mexico & Orient Railway Company to the defendants Macon Bros., covering said car of wheat and shipment thereof to Fort Worth, and that another bill of lading had been substituted for the original bill of lading issued to Fort Worth binding the defendant James C. Davis to carry, or cause to be carried, said car of wheat from Rochester, Tex., to Galveston, Tex. A bill of lading was said to have been issued on or some time after the 4th day of August, but the evidence showed that it was issued on or after August 11, 1919. Suit was filed December 24, 1921. A "bill of lading" is a memorandum or acknowledgment in writing when signed by the carrier binding the carrier to transport the goods as therein directed. Such bill of lading is an instrument in writing binding the carrier to do the things therein specified. The bill of lading introduced in evidence, and requiring transportation to Galveston, was dated August 14, 1919. The testimony of plaintiff showed that the payment of the demurrage, reconsignment charges, and war tax on the shipment was made at Galveston, and that an expense bill was made out for such charges, and the payment demanded at Galveston before a delivery of the car to plaintiff was made. The evidence further shows that the car arrived at Galveston about the 28th of February, 1920, and that payment was made of these charges some time thereafter.

[3] We believe that the evidence fully sustains the theory that the suit was filed within two years after the payment of the charges were made by plaintiff, even if the bill of lading could be held not to constitute an obligation in writing. It is upon this payment that the plaintiff seeks to recover. A pleading is not demurrable because it fails to state whether the contract sued on is oral or in writing, where such fact is not essential to the cause of action. Smith v. Patrick (Tex. Civ. App.) 36 S. W. 762.

[4] The second proposition urged by appellant is that plaintiffs failed to allege to whom and at what point the expenses, consisting of demurrage, reconsignment charges, and war tax, were paid, and it was error for the court to overrule the general demurrer for that reason. It was urged that—

"In order to have said car moved from Fort Worth, Tex., to Galveston, Tex., as aforesaid, the plaintiff was compelled to and did on December 27, 1919, pay the following expenses accruing against said car while at Fort Worth, Tex., as aforesaid, to wit: Demurrage, $483; $5 reconsignment charges; and the sum of $19.94 war tax on the demurrage and reconsignment charge above mentioned."

It was shown that the charges were paid at Galveston. However, no plea of variance between the allegata and probata was urged. These two assignments are overruled.

[5] The third proposition is that the trial court erred in overruling the general demurrer of defendant below because it failed to allege that it was through the fault or negligence of the defendant James C. Davis, his agents and employees, that the car in question was delayed, which delay was the result of the damages suffered, if any. It was alleged that—

"However, said Kansas City, Mexico & Orient Railway Company of Texas did not so transport and carry and cause to be carried said car of wheat to Galveston, Tex., as obligated to do as aforesaid, but on the contrary carried and had same carried to Fort Worth, Tex., where same was delayed as aforesaid through the fault and negligence of said Kansas City, Mexico & Orient Railway Company of Texas," etc.

It was alleged that—

"The damages to the plaintiff already fully set out resulted from the failure of said defendant James C. Davis, Agent of Railroads, his agents and employees, to carry said car as agreed and obligated and by delaying said car at Forth Worth, Tex., as aforesaid."

We think the two allegations sufficiently allege the negligence of the defendant railway company and James C. Davis as the Agent of the Railway. Article 6554, Rev. Statutes, provides:

"In case of the refusal by such corporation or their agents so to take and transport any passenger or property, or to deliver the same, or either of them, at the regular appointed time, such corporation shall pay to the party aggrieved all damages which shall be sustained thereby, with costs of suit; and in case of the transportation of property shall in addition pay to such party special damages at the rate of five per cent. per month upon the value of the same at the time of shipment, for the negligent detention thereof beyond the time reasonably necessary for its transportation; provided, that in all suits against such corporation under this law the burden of proof shall be on such corporations to show that the delay was not negligent."

The Supreme Court, in the case of Texas Central Ry. Co. v. Hannay-Frerichs & Co., 104 Tex. 603, 142 S. W. 1163, said:

"Article 4496 [now 6554], Revised Statutes, placed the burden on the defendant to show that the delay was not negligent. Whatever circumstances contributed to produce the delay in spite of ordinary diligence on the part of the carrier, and to which circumstances the carrier did not contribute, were admissible to disprove negligence."

The Supreme Court in this case upheld the validity of this article. This, the third proposition, and also the fourth, are over-ruled.

[6] The fifth proposition is directed against the admission of certain testimony of J. H. Scott, who testified that he had occasion, acting for the plaintiff below, to make a contract with Macon 'Bros. on August 11, 1919, for the purchase of a carload of wheat, and that. it was for the delay in the delivery of that car by the defendant railway company, acting through James C. Davis, that the plaintiff sought to recover. Objection was made to this testimony on the ground of a variance, the petition alleging that the contract was made on August 4th, and the testimony showing that it was made on August 11th. No pretense of a surprise was urged in the trial court and no motion for continuance for the purpose of securing testimony with reference to the shipment of August 11th was made. The dates of the contract between plaintiff and defendant Macon Bros., or the date of the shipment, were immaterial, except in so far as it involved the question as to whether such shipment was not within the period of limitation, or in so far as the allegation of such date might be necessary for the preparation and securing of evidence on the part of defendant James C. Davis. No claim was made for further time to secure evidence with reference to the shipment of August 11th, and, as before shown, the evidence supports the contention of the plaintiff below that the payments of the amounts for which it seeks to recover were made within two years from the filing of the suit. No injury is shown, therefore, to defendant by virtue of the ruling of the court in admitting the testimony, and the proposition is overruled.

[7] The sixth proposition urges error in the trial court's admitting testimony of J. H. Scott, to the effect that he had to pay the items of demurrage, war tax, and reconsignment charges before the car would be released at Galveston, and it was paid to Witherspoon, joint agent of railroads. The objection was that it was nowhere alleged in plaintiff's petition that the plaintiff in error ever received the money so paid, or that he had anything to do with the same, and further that said testimony had no bearing whatever on the cause of action alleged. If Witherspoon was the joint agent of the various railroad companies coming into Galveston, and the plaintiff in error was the general agent of all railroad companies, including those in Texas, and had jurisdiction over them and was responsible for their acts, then the payment of the charges to Witherspoon was, in effect, the payment to the plaintiff in error. The assignment is overruled.

[8] Objection is made in the seventh proposition to that part of the judgment below allowing interest on the claim. It is urged

that James C. Davis, plaintiff in error, being the representative of the United States government, and a judgment against him being in effect against the United States, the court erred in rendering judgment against said Davis; that there is no authority of law for the rendition of a judgment against the government of the United States for interest on claims accruing under and by the terms of the Transportation Act of 1920 (U. S. Comp. St. Ann. Supp. 1923, § 10071¼ et seq.). We have examined said act as found in title 61, Barnes' Federal Code, 1921 Supp., and find no authority for the contentions of plaintiff in error. The provisions of the Act authorizing the appointment of a Director General or Agent of Railroads, and of the Agent of the President of the United States designated for the purpose of winding up the affairs of the United States Railroad Administration, evidently contemplated that plaintiff could sue such representative and recover judgment against him in causes of action that would otherwise be against the different railroad companies. Evidently litigants are authorized under these acts of Congress to bring suits against such representatives, and we know of no authority prohibiting trial courts from allowing interest on claims accruing either before or after judgment. Even if 'it can be held in effect that the judgment rendered created a liability against the United States government, yet suits being authorized by Congress against the representative of the Railroad Administration, we know of no reason why interest should not be allowed. On March 21, 1918, Congress passed the Federal Control Act, and section 10 thereof provides:

"Carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government." U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115¾j.

On February 28, 1920, the federal control of railroads terminated by an act of Congress, and it is provided in said act by section 206a (U. S. Comp. St. Ann. Supp. 1923, § 10071¼cc) that the President shall appoint an agent against whom suits may be brought for claims growing out of federal control.

Article 4981, V. S. Tex. Civ. Statutes, provides that—

"All judgments of the several courts of this state shall bear interest at the rate of six per cent. per annum from and after the date of

the judgment, except where the contract upon which the judgment is founded bears a specified interest greater than six per cent. per annum and not exceeding ten per cent: per annum, in which case the judgment shall bear the same rate of interest specified in such contract and after the date of such judgment."

Interest is payable on a claim growing out of an overcharge from the time when the money for which recovery is sought was actually paid under protest. Guffy Petroleum Company v. Hamill, 42 Tex. Civ. App. 196, 94 S. W. 458, writ refused; S. A. & A. P. Ry. Co. v. Smith (Tex. Civ. App.) 171 S. W. 282; M., K. & T. Ry. Co. v. Gray (Tex. Civ. App.) 160 S. W. 434; T. & P. Ry. Co. v. Erwin (Tex. Civ. App.) 180 S. W. 662; and other cases that might be cited.

[9] By reason of the statutory rule and the well-established rule of decisions prevailing in this state at the time of the arising of the cause of action in the instant case and at the time of the trial, we feel that, in the absence of some statutory denial of such right to recover interest, interest is recoverable. To hold otherwise would deny the constitutional right of due process of law. Hill v. Davis, Agent (Tex. Civ. App.) 257 S. W. 340.

All assignments are overruled, and the judgment is affirmed.