## BARRETT v. COMMERCIAL STANDARD INS. CO.

### No. 14135.

Court of Civil Appeals· of Texas. Fort Worth.

Nov. 15, 1940.

Rehearing Denied Dec. 13, 1940.

Fay W. Prescott, of Fort Worth, for appellant.

Buck & Knapp, of Fort Worth, for appellee.

SPEER, Justice.

James R. Barrett sued Commercial Standard Insurance Company on a policy of insurance alleged to cover the loss of an automobile from theft. The parties will carry the same designation here as in the trial court.

Plaintiff owned an automobile and purchased from defendant a policy of insurance against theft. The contract was in evidence and provides, among other things, that the defendant would pay to plaintiff such loss as he should sustain, caused by theft of the car, excepting, however, a theft committed by a person or persons in the insured's household, or by one acting under express or implied authority of the insured. The obligation provides for payment as insured's interest may appear.

Plaintiff's contention was that the automobile was stolen by Cramer Lee Payne on August 19, 1939. The policy contract was effective at that time. The Sun Auto Finance Company was made a party plaintiff under an allegation that it held an interest, as mortgagee, in the insured car. The Sun Auto Finance Company appeared and alleged that it held a chattel mortgage lien on the car to secure an unpaid balance of $16.36 owing by plaintiff Barrett.

The case was tried to a jury on special issues. Along with the issues submitted, the court defined the words "Family" and "Household". These explanations were: "By the word 'family' as used in this charge, is meant, all of the individuals who live under the authority of another, including the servants of the family." And, "The word 'Household' as used in this charge, means, those who dwell under the same roof and constitute a family." In response to the special issues submitted, the jury found that, (1) Cramer Lee Payne, the nephew of Barrett (insured), was not a member of the household of Barrett at the time of the taking of the car by Payne; (2) Payne did not have implied authority to take the car at the time and place he took it; (in connection with the foregoing issue an explanation was made of what was meant by "implied" authority); and (3) the value of the car, when taken, was $200.

After the verdict was received by the court, defendant filed its motion for judgment non obstante veredicto, based upon the grounds that the verdict was contrary to the undisputed and uncontradicted evidence which established as a matter of law that Cramer Lee Payne was a member of the insured's household, within the meaning of the contract, when he took the automobile on August 19, 1939. The court sustained defendant's motion for judgment notwithstanding the verdict, and entered judgment accordingly. The Sun Auto Finance Company did not appeal, but from the judgment entered plaintiff has perfected his appeal and now brings the record before us for review.

That part of Article 2211, Vernon's Texas Civil Statutes, applicable to this appeal is as follows: "Provided, that upon motion and reasonable notice the Court may render judgment non obstante veredicto if a directed verdict would have been proper." It is always true that if a plaintiff fails to produce sufficient evidence to raise an issue of his right to recover, the court should instruct a verdict for the defendant. It is equally true that if such evidence is produced, the court should not summarily instruct a verdict, but leave the matter to a determination by the jury, who are the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony. It logically follows that when a jury question is thus presented, the court should not sustain a motion

for judgment non obstante veredicto, for obviously a "directed verdict" would not be proper.

■ If it could be said that Payne, who took plaintiff's car, was a member of his "household", then there was no coverage by the terms of the policy sued on. We have seen no case by the courts of this State which construes the word "household" when used as in this case. The trial court's definition, quoted above, was not objected to by defendant, and it is deemed to have approved what the court said. Article 2185, R.C.S.

Provisions in insurance contracts similar to the one before us have been construed by courts of other jurisdictions. In those cases the words "family" and "household" seem to be treated as if meaning the same. Rydstrom v. Queen Ins. Co., 137 Md. 349, 112 A. 586, 14 A.L.R. 212, was a suit on a contract of insurance against theft. Insured's car was stolen by his nephew, who at the time was visiting in his uncle's home. The nephew resided in a distant state and was a temporary guest in the home where the car was stolen. The insured testified that his nephew had the freedom of the household at the time; while living for the short time in his uncle's home, the theft was committed. The court held that the nephew was a member of insured's household and no liability was incurred by the insurance company. In such circumstances the court in that case held that the meaning of the word "household," when used as a qualifying word, pertained to the house or family.

"Household" is defined by Webster's New International Dictionary as: "Those who dwell under the same roof and compose a family; a domestic establishment; family." Murray's Oxford Dictionary says: "The members of a house collectively; an organized family, including servants or attendants dwelling in a house; a domestic establishment." To the same effect is the Century Dictionary. The foregoing definitions were relied upon by the court in Ocean Accident & Guaranty Co., Ltd., v. Schmidt, 6 Cir., 46 F.2d 269. That court also cites Arthur v. Morgan, 112 U.S. 495, 499, 5 S.Ct. 241, 243, 28 L.Ed. 825, wherein it is said: "Persons who dwell together as a family constitute a 'household.'"

■ The evident purpose of placing an exception, such as the one here, in a policy of insurance, was to guard against liability when the theft is committed by one who has unrestricted access to the home and its contents, including the keys to the car in the instant case. In its most common acceptation, the word "family" includes father, mother and all the children, wherever they may reside. A servant is an employee, but if his duties are such that he does not have freedom of the home as would a member of the immediate family, certainly such employee would not be classed as a member of the "household"; but if his employment was such as to make it his duty to go in and out of the family home and exercise watch over its contents, he would be embraced within the word "household". We think this is what was meant by the parties to the contract under consideration.

Bearing in mind that the trial court sustained defendant's motion for judgment notwithstanding the verdict, upon the theory that the undisputed testimony showed the alleged thief was a member of the insured's "household" as a matter of law, and that an instructed verdict would have been proper, let us look at the testimony in the record.

James R. Barrett, the plaintiff, Cramer Lee Payne, the alleged thief, and the witnesses Birdie Lee Brown and Helen Dickson are negroes. Plaintiff testified substantially that Payne was his nephew, about nineteen years old, had no home except where his hat was hung; he saw Payne pretty often and ran around with him some; he felt a certain responsibility to help Payne as best he could, since he seldom had work and had no parents; he often gave him small sums of money to buy food and gave him clothes occasionally. Witness lived in the home of a woman on Texas Street in Fort Worth for several months prior to the time he went to the St. Louis Avenue house, and that while he lived on Texas Street, Payne ate some of his meals there and slept in the house twenty or thirty nights; witness did not know where Payne slept on other nights.

Plaintiff said that when he left the Texas Street residence, he went to live with Birdie Lee Brown in a servant house at 463 St. Louis Avenue. He had lived there about a month when the car was stolen. Helen Dickson also lived in the house with Barrett and Birdie Lee Brown; he said that on August 19, 1939, he and the women went to a nearby cafe for breakfast,

brought Payne and James Riley, another negro, back to the house with them; that he went to sleep before noon and left the two men and women playing cards in the room; that when he awoke in midafternoon his car was gone and upon being told that Payne had taken the ignition key and some change from a dresser and left, saying he would be back in a few minutes and not to awaken Barrett, he went out to hunt for the car; he reported the loss to police that night; he said he had permitted Payne to drive his car a time or two on errands in the city and that Payne had stolen it on a previous occasion and drove to Corsicana, but returned the car next day; that he did not consent for Payne, or any other person, to take the car on August 19, 1939. He reported the loss to the defendant, and some days later had a letter from a woman whom he believed had gone with Payne in the car, written from Palestine, Texas; that he and a representative of defendant went to the address given in the letter but were unable to locate either Payne, the woman or the car; he said Payne never stayed or slept at the St. Louis Avenue address at any time while he lived there, insofar as he knew, that there were a few nights when witness was not there.

Birdie Lee Brown testified as did Barrett as to his staying with her at the St. Louis Avenue address; that she had lived there for four years and that Helen Dickson stayed there a part of the time; she also related the occasion of the two men and women being at the house and playing cards while Barrett slept; that Payne went to the dresser, picked up the car keys and some change and said not to awaken Barrett, that he would be back in a few minutes; Payne did not return and when Barrett awoke she told him what Payne had said and done; she said Payne had slept in her house one night since Barrett had been there and that was when Barrett was away; that Payne left the house in Barrett's car.

The other negro woman, Helen Dickson, likewise told the story of the card game while Barrett was asleep, and the taking by Payne of the keys and money from the dresser and corroborated Birdie Lee Brown as to what Payne said, and that Payne drove away in the car. This witness, however, said that Payne slept on a pallet at the St. Louis Avenue house nearly every night while Barrett lived there. This is substantially all of the testimony touching on the point of whether or not Payne lived with and was a member of Barrett's "household". Riley did not testify; he was said to be in a hospital at the time of trial.

Clearly, the contradictory statement by the witnesses, two of whom said Payne did not live at the St. Louis Avenue house and never slept there more than one night and then when Barrett was away, and the testimony of Helen Dickson that he did stay there, slept on a pallet practically the whole time of Barrett's residence there, only raised an issue of fact for the jury. There is no doubt that reasonable minds could differ as to which was true. A trial court is only authorized to instruct the jury to return a particular verdict when there is no evidence of probative force in support of the contention of the party against whom the verdict is directed. If there is competent evidence to support a verdict if rendered for one of the parties, the court should not instruct the jury to return a verdict in favor of the other. When a motion is made for a directed verdict, the court will presume to be true the evidence of the opposite party, and give it the most favorable construction that it will bear and give to that party all reasonable inferences arising therefrom. All contradictory evidence will be disregarded, when determining if the directed verdict should be given against that party. Burroughs et al. v. Smith, Tex.Civ.App., 294 S.W. 948, writ refused.

If the evidence upon the controlling controverted issues is such that reasonable minds could differ in its construction and application, and a jury trial is demanded; a directed verdict should not be given, and consequently a judgment non obstante veredicto should not be entered. Draper v. Presley et al., Tex.Civ.App., 111 S.W.2d 1124, writ dismissed.

In Johnson v. Moody, Tex.Civ.App., 104 S.W.2d 583, writ dismissed, judgment correct, it was held that the power of a trial court to render judgment non obstante veredicto is controlled by the same principle involved when a Court of Civil Appeals reverses and renders a case when the trial court erroneously refuses to give a peremptory instruction. Citing Wininger v. Fort Worth & D. C. Ry. Co., 105 Tex. 56, 143 S.W. 1150, wherein the rule in such cases was announced to be: "The honorable Court of Civil Appeals [141 S.W. 273] had authority to reverse the judgment of

the trial court on the preponderance of the evidence; but it could not render the judgment, if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff." The rule announced is especially applicable here, for the question was submitted to the jury and answered favorable to plaintiff.

We do not think that the testimony of Barrett, to the effect that Payne was his nephew, a son of his deceased sister, that he had no one to look after him and that he, Barrett, had an interest in him, often bought him meals when he was hungry, gave him some of witness' clothes when he was ragged and dirty, and interested himself in the kind of woman he lived with, constituted Payne a member of Barrett's "household" and excepted the defendant from liability on its contract, under that exception. Nor do we believe that Payne's relation to the household of Barrett was changed by the fact that the former was in the latter's room, apparently by invitation, on the day the theft is alleged to have taken place. It cannot be said that a guest invited by another into his home to play a game of cards thereby becomes a member of the host's "household".

Under the facts revealed by this record, Payne was not a member of the insured's household, as a matter of law, at the time of the alleged theft, and the court could not properly so hold and instruct a verdict for defendant under the provisions of the contract; this was the only theory upon which judgment notwithstanding the verdict could have been entered. The trial court should have entered judgment in conformity with the pleadings, the evidence and the verdict. Article 2211, R.C.S.

It is contended by defendant, by cross-assignment of error, that even if we reverse the judgment of the trial court we cannot render a judgment on the verdict, for the reason the issue of whether or not Payne was guilty of theft when he took the car was not submitted to the jury and that plaintiff did not request the submission of such an issue. The testimony of three witnesses indisputably shows that Payne took the car without the knowledge or consent of Barrett; that he had not been apprehended, although a charge had been filed against him for the theft, and that the car had not been returned by the alleged thief. Barrett testified in two or three different instances, without objection by defendant, that Payne "stole" the car. Under such circumstances there was no issue to be submitted on the point. The court was not required to submit anything but controverted issues. The cross-assignment is overruled.

The contract sued on by plaintiff provided that defendant would pay him for the loss of the automobile from theft (except under conditions previously discussed herein) "Payable as interest may appear to the named Insured (James R. Barrett) and the Sun Auto Finance Company, Fort Worth, Texas (Name and address of the mortgagee)." The record shows without dispute that the value of the car was $200; that mortgagee held a lien to secure a balance of $16.36 and that its interest therein was for that amount; that plaintiff's interest was $183.64. It does not appear from the record that plaintiff could recover any more than his interest in the car. The mortgagee did not appeal from the judgment which denied it a recovery. The judgment became final in that respect. Under the terms of the contract it would be improper to allow plaintiff to recover of defendant more than to the extent his interest appeared in the stolen car; that interest was $183.64 and that is the amount he should have recovered in the trial court.

For the errors shown, the judgment of the trial court, insofar as it denied a recovery to plaintiff, is reversed and here rendered for plaintiff in the principal sum of $183.64, with interest thereon at six per cent after August 19, 1939, the date of the loss of the car, and all costs will be taxed against the defendant. Insofar as judgment was against Sun Auto Finance Company, mortgagee, from which no appeal was taken, the judgment below is undisturbed. Reversed and rendered in part and undisturbed in part.