## COLEMAN MUT. LIFE INS. ASS'N v. LASSETER et al.

### No. 2371.

Court of Civil Appeals of Texas. Eastland.

May 21, 1943.

Rehearing Denied June 18, 1943.

E. M. Critz, of Coleman, for appellant.

Smith & Smith, of Anson, for appellees.

LESLIE, Chief Justice.

This is a suit by Mrs. Norma Acuff Lasseter against the Coleman Mutual Life Insurance Association (a local mutual) to recover on a certificate, or so-called policy of life insurance, issued May 10, 1938, to Mrs. Sarah A. Acuff, with loss payable to plaintiff, her daughter, in the sum of $1,000, being policy No. Z–370.

The defendant answered by exceptions, general denial, and specially denied it had taken over and assumed all liability under the terms of the policy and alleged that assumption, if any, was conditional, and that in taking over said policy it agreed to carry the same in a separate group known as the "Winters Mutual Policy Group", with the understanding that the same would be paid from funds derived from policy holders of Winters Mutual Group policies, and to the extent only that such group of policy holders paid assessments levied upon the same for that purpose.

The defendant further denied that it had on hand at date of the death of Mrs. Acuff or at date of trial any funds from said Winters Mutual Group subject to the payment of the policy and it did not allege it had made an assessment on the group for that purpose.

Plaintiff alleged proper notice, presentment of claim, and prayed for judgment in the sum of $1,000, less monthly premiums at $10.12 per month from November, 1939, to August, 1941, inclusive, and for such legal and equitable relief as she might show herself entitled to.

The trial was before the court without a jury, and judgment was rendered in favor of the plaintiff for the face amount of the policy, less the monthly premiums tendered. There are no findings of fact and conclusions of law. The defendant appeals from the judgment, resisting the same on different grounds, the material and controlling ones of which will now be considered.

The purported insurance appears to have been carried for many years. It was first taken out with an Abilene Mutual (1928), thereafter transferred to the Winters Mutual, and later transferred by that company to the Coleman Mutual Life Insurance Association, defendant herein. In the trial it developed that the defendant had also sold the group to the Bankers Life of Waco, but did not transfer Mrs. Acuff's policy therewith.

At first the monthly premium was $6.75. Later, the amount was raised to $10.12. When the alleged liability accrued, past premium payments aggregated more than the face of the policy.

When plaintiff's father died in March, 1938, she became beneficiary in the policy and in a sense assumed responsibility for the payment of the monthly premium, as her mother had become aged and deceased.

322

Plaintiff continued to pay the $10.12 monthly premiums until the month of November, 1939, at which time and without any default having occurred in such payments, she mailed check for said amount to the defendant, but the defendant rejected same and returning it to her with the statement that they had issued her mother a $500 policy, which took the place of the $1,000 policy, and that the new premium was $6.50.

Mrs. Sarah A. Acuff, the mother, refused to accept the $500 policy, and never paid any premiums on the same. In no way did she or the plaintiff agree to abandon the $1,000 policy, on which premiums had been promptly paid for many years. After the defendant refused to receive the last $10.12 premium tendered it on the $1,000 policy and indicated a like course in the future, neither the plaintiff nor her mother tendered further monthly premiums thereon, but held themselves, as found by the trial court, ready, able and willing to pay same. In the trial court the plaintiff alleged tender of such unpaid premiums down to the death of the mother, and asked that the judgment be offset by such amount. The judgment was so rendered.

On April 25, 1939, after due notice to its policy holders, the Winters Mutual held a meeting of its members, and all present voted in favor of the transfer of its membership, mortuary funds, etc., to the Coleman Mutual, according to the terms of an agreement or contract which those two companies entered into that day and which was approved by the Insurance Commission April 27, 1939. After the resolution authorizing such merger and transfer was adopted unanimously by the Winters Mutual policy holders, they adjourned. Thereafter, the action so taken was disclosed to Mrs. Acuff by the Coleman Mutual's letter of May 17, 1939, which is in part as follows:

"Dear Friend: This letter will be your notice of the merger of the Winters Life Insurance Company, at Winters, Texas, and the Coleman Mutual Life Insurance Association, of Coleman, Texas.

"The Coleman Mutual Life Insurance Association assumed the liability of the Winters policy holders as a group, and the group will be known as 'Winters Group'.

"The Coleman Mutual Life Insurance Association thus assumes liability on any and all Winters policies now in force held by you, *which is in accordance with the re-insurance agreement entered into by and between the two companies (April 25, 1939) and approved by the Insurance Department of the State of Texas (April 27, 1939).*

"File this letter with your policy for your receipt of assumption. Yours very truly", etc. (Italics and parenthetical expressions ours.)

Looking to said insurance agreement (of April 25th) for the measure of defendant's liability, if any, under the policy, we find the following stipulations therein:

"Said Coleman Mutual agrees in consideration of said assignment and transfer that it does hereby take over all said members and policy and certificate holders of said Winters Mutual and agrees to become liable for the policies and contracts with said members of said Winters Mutual in the following manner and to the following extent, to wit: That is that said Coleman Mutual will pay all liabilities now existing or hereafter accruing in favor of said policy holders in said Winters Mutual in full *so far as the same can be paid out of the assets of said Winters Mutual and the premiums collected by said Coleman Mutual from policy holders of said Winters Mutual;* and that said Coleman Mutual will carry and retain said policy holders in said Winters Mutual Group to be known as Winters Mutual Life Insurance Company Group.

"Provided further, however, that said Coleman Mutual shall have the right *with the consent* of any of the policy holders in said Winters Mutual to reissue such policy upon forms used by said Coleman Mutual, and in the event of such reissuance to take up and cancel existing policies so reissued, and thereafter and upon the issuance of such renewal policies the liability of said Coleman Mutual to such policy holders receiving such renewal certificates the policies shall be governed by such renewal certificates and by the Constitution and By-Laws and rules governing the Coleman Mutual and its liability to its policy holders.

"This assignment is upon the further understanding and agreement that as to all such policies not renewed or reissued premiums collected shall be construed as now fixed with respect to each of said policy holders in the Winters Mutual respectively, but as to such reissued policy the rate shall be governed by the rules and regulations of said Coleman Mutual."

From the first paragraph of said insurance agreement just set out, it is obvious

that the defendant's liability was limited to the payment of a Winters Mutual policy "in full, so far as the same can be paid out of the assets of said Winters Mutual and the premiums collected by said Coleman Mutual from the policy holders of said Winters Mutual."

With that test for the measure of plaintiff's right of recovery against defendant, we pass to further undisputed facts of this case, as reflected by the testimony of S. T. Cobb, Secretary-Treasurer of defendant, and who had been with that Company since its organization in January, 1924. He was introduced as a witness for the defendant and showed familiarity with the business of the organization through the years, and according to his testimony he kept the income from the policies and the Insureds of the Winters Mutual in a separate fund, as originally agreed upon (April 25th), and he further testified that the mortuary income of the Winters Group from October 1, 1938, to November 1, 1939, was $41,543.57, and that the Coleman Mutual had paid out during said period to the Winters Group $63,-556. That the $41,543.57 was the total net income to the Coleman Mutual from the Winters Group during that period. That the difference was a deficit of $21,712.43. That at the time (October 3 and 17, 1939) they urged Mrs. Acuff to take the $500 policy, in lieu of the $1,000 policy, there were unpaid claims against the Winters Mutual policy holders of $14,590. That the same grew steadily to about $21,712.43 on November 1, 1939.

In response to other questions, the witness Cobb replied as follows:

"Q. So, did you have the funds on hand in your Company, in the Coleman Mutual Life Insurance Association, subject to the payment of this Winters Policy that is sued on, either on November 1st, or 6th, or 7th, 1939, or on the date of the death of Mrs. Sarah A. Acuff? A. No.

"Q. Do you now have them on hand? A. No.

* * * * * * *

"Q. If it had to be paid, where would you get the money, from your Company? A. Well, there is no funds available to pay it with. That Group was reinsured.

"Q. Was reinsured? What did you do with that Group? A. We reinsured it with the American Bankers Life Insurance Company of Waco.

"Q. What do you mean by that? They took the Group over? A. Yes. They took the group over.

"Q. The policies and all? A. Yes.

"Q. And you had nothing further to do with it? A. That's correct.

"Q. And when did that happen? A. I believe that was September 1, 1940.

"Q. From and after that date, September 1st, 1940, did your Company have any of this Winters Group of policies? A. No, sir.

"Q. Did you have any of them in September, 1941? A. No, sir.

"Q. Do you have a contract of some kind with the American Bankers Life, in Waco? A. Yes.

"Q. What are the general terms of it? A. Well, they just accepted all of the members paid up in that particular group, as of the date of the transfer was made."

The above is the first information disclosed by pleading or testimony that the American Bankers Life Insurance Company of Waco had purchased the Winters Group, and it is clearly reflected that neither the plaintiff, nor her mother, knew anything about that deal. It is probably a fair inference that after Mrs. Acuff rejected the $500 policy (dated October 17, 1939, and sought to substitute for the $1,000 policy) and did not thereafter send in monthly premium of $10.12 for any other month except November, 1939, the defendant considered the Acuff policy lapsed, and therefore omitted to trade it off with the other members of the Winters Group which it passed on to the Bankers Life. Be that as it may, and regardless of the defendant's motive, the law will not permit it to sidestep its obligation under the facts reflected by this record. When defendant traded the other members of the Winters Group to the Bankers Life and failed to transfer the Acuff policy therewith, it failed "to carry and retain said policy holder(s) in said Winters Mutual Group * * *", as it had agreed to do, thereby insuring its participation in any mortuary fund to which subsequent facts might show the policy was entitled at Mrs. Acuff's death. That was a clear breach by the defendant of the provisions of the contract of April 25th and plaintiff's rights should not be prejudiced thereby.

In a sense it is mere speculation as to why the Coleman Mutual sold the Winters

Group to the Bankers Life and failed to transfer the Acuff policy and thus insure or make provision for the same to participate in the mortuary funds allocated to that and other policies of said group, but the fact remains that it did fail to do so. If it acted upon the theory that the Acuff policy had for any reason lapsed when such was not a fact, that would not exonerate the Coleman Mutual from liability under the terms of the original policy and said agreement. Any such misapprehension of its liability under the facts or the law would not amount to a defense to the plaintiff's suit. It counts for nothing that Cobb testified that his Company did not have in its treasury funds, or sufficient funds, to pay the Acuff policy because it had sold or re-insured the Winters Group (except Mrs. Acuff) "with the Bankers Life on September 1st, 1940," and thereafter "had nothing further to do with it" (the Winters Group).

Concerning the transfer to the Bankers Life, Cobb also testified his company had "a contract of some kind with the American Bankers Life of Waco", but he gave no details or information of the terms of such contract or its provisions, if any, for the payment of any obligation arising from the Acuff policy. He merely testified his Company had no funds with which to pay the policy. That, however, would be no defense to plaintiff's right to a judgment, at least, for the amount due under the terms of the policy.

In a case similar in principle, our Supreme Court in The Supreme Council, etc., v. Anderson, 61 Tex. 296, stated and applied a sound rule of law applicable to the facts of this case. It was there held, as stated in the third syllabus, as follows: "In a suit upon such a benefit certificate against such supreme council, brought by the surviving wife of a deceased member, when it did not promise to pay any specific amount, but a sum not to exceed five thousand dollars [$1,000 in the instant case], on certain conditions, the existence of which could be determined by the books, vouchers and official papers of the defendant, it was not obligatory on the plaintiff to show by his pleadings and evidence just what sum he was entitled to recover; but if the books and papers of the defendant revealed that plaintiff was entitled to a less sum than five thousand dollars, the defendant, being in possession of the only source of accurate knowledge, should set that fact up in defense."

This Court has heretofore dealt with the same question in the case of Sweetwater Progressive Mutual, etc., v. Allison, Tex. Civ.App., 22 S.W.2d 1107. That was a case where the policy provided a "named amount" as a maximum liability, but limited the sum payable to "the amount collected and allotted to the mortuary fund from one monthly premium received from the Insureds of (a) class." There the one seeking to enforce the obligation brought his claim within the limitation (as was done by the plaintiff herein), and this Court held that the burden was then cast on defendant, or insurance association in such policy, to make proof of the amount that would be collected from an assessment under such circumstances. In that case many authorities are cited in support of the holding made, and they are here relied on to support the conclusion announced.

In the instant case, however, the defendant's own testimony shows it made no effort to discharge any such burden by making any collection whatever under the assessment plan, but in fact put it beyond its power to do so when it transferred all the Winters Group, except Mrs. Acuff, to the Bankers Life. Had the defendant been in a position to make such assessment and the same had been faithfully made and applied, the policy might have been liquidated with something less than the face of the same.

After Mrs. Acuff and those assisting her had paid the $10.12 monthly premium on the policy from the merger under the April 25th contract until November, 1939 (when the Coleman Mutual returned the last $10.12 check and sought to substitute the $500 policy), the defendant, in anticipation of its attempt to make said substitution, wrote Mrs. Acuff on October 3, 1939, a letter which is in part as follows:

"According to the terms of the insurance agreement (April 25th) entered into between the members and Directors of the Winters Mutual Life Insurance Company and the Directors of the Coleman Mutual Life Insurance Association and approved (April 27th) by the Insurance Commissioners; we are today mailing you a new Winters Group policy to take the place of the policy you now hold.

"A requirement of the new law passed at the last Legislature is that all members in the same group receiving the same benefits must pay the same rate or assessment according to age, and this assessment must

be for a sufficient amount and at such proper intervals as will meet the reasonable operating expense of the Association and pay in full the claim arising under its certificates. Thus, it makes it absolutely necessary that we make this change in order that we may comply with the new law."

After a careful study of all the terms of the contract of April 25th, it must be held that there is nothing in that insurance agreement warranting or empowering the defendant to issue a $500 policy and enforce its acceptance by Mrs. Acuff in substitution of her $1,000 policy. That was not exercising the Company's "reserved right" to levy "additional premiums" where circumstances justified and besides said contract specifically forbade the Coleman Co. from reissuing a policy on its own forms except by consent of the policy holder, as may be seen from the foregoing excerpt therefrom. Neither is there any authority in the law referred to in said letter, authorizing any such procedure. The letter evidently refers to the Acts of the 46th Legislature, p. 405, Vernon's Ann.Civ. St. art. 5068—1, which became effective May 12, 1939, which date is subsequent to the date of the contract, April 25, 1939.

That Act, Sec. 9, provides:

"Every certificate issued must be approved by the Board as to form and language before it is used by an association. It is not mandatory that these forms be so uniform for all associations, but the Board is directed to bring about as great uniformity as is feasible as early as practicable by cooperation with the several associations. * * *

"It will not be required that an association call in and reissue outstanding certificates if upon proper application to the Board and if special permission is granted by the Board, it shall by appropriate resolution or other action declare that claims and other obligations on outstanding certificates will be settled and met as though the requirements of this Act were contained in such certificates; and provided further that the association acts accordingly."

Certainly there is nothing in this provision of, the law designed to effect uniformity of certificate within a reasonable time, to warrant the language of defendant's letter or to support the statements therein made with the view of bringing about Mrs. Acuff's acceptance of the $500 policy.

The trial court's judgment is well supported by the evidence, and we believe that it may with safety be held that the undisputed testimony warrants the judgment.

In appellant's brief it presents a question of variance. Under the authorities we think no reversible error is shown by that point. If a variance, it was not material. It neither misled nor surprised anyone. McDonald v. Cabiness, 100 Tex. 615, 102 S.W. 721; Kelsey v. Myers, Tex. Civ.App., 29 S.W.2d 855; Goodwin v. Abilene State Bank, Tex.Civ.App., 294 S. W. 883 (pt. 9); Davis, Director, etc., v. Stamford Mill & Elevator Co., Tex.Civ. App., 260 S.W. 1081; Luzenburg et al. v. Bexar Bldg., etc., 9 Tex.Civ.App. 261, 29 S.W. 237, (writ denied); 33 Tex.Jur. p. 662, Sec. 205, et seq.

For the reasons assigned, the judgment of the trial court is affirmed.