## INGRAM v. GENTRY et al.
### No. 2749.

Court of Civil Appeals of Texas. Waco.

Oct. 16, 1947.

Rehearing Denied Nov. 20, 1947.

Owen F. Watkins, of Mexia, for appellant.

W. W. Mason, of Mexia, for appellees.

LESTER, Chief Justice.

Appellant, as plaintiff below, brought this suit to recover the sum of $583.12 from appellees, claimed to be due him as a result of an alleged oral contract entered into between the parties, by the terms of which he alleged that he was to receive from appellees the sum of $1.50 per hour for each hour he actually worked, and as contractor and supervisor he was to receive ten per cent commission on all moneys paid out as wages to all employees for their services rendered in the construction of a building to be used as a cafe. Appellant says that he was paid $1.50 per hour for each hour he worked as a laborer but was not paid his ten per cent commission on the amount of the pay roll or the $50 which he alleged was for the use of his truck in doing some hauling during the construction of the building.

Upon the conclusion of the testimony the court below granted appellees' motion for an instructed verdict and so instructed the jury to return a verdict for them. Appellant has appealed to this court for relief.

Appellees say that the instruction below was proper for three reasons: (1) that appellant failed to prove the parties made a contract in which they agreed to pay him ten per cent commission; (2) that if

there was a contract, appellant failed to prove that he was entitled to recover any sum of money by reason thereof; and (3) that if the contract was made, there was a variance between the one alleged and the one proved.

Before a court should give a peremptory instruction against a party there must not be any evidence in his favor of sufficient probative force that reasonable minds might differ as to the ultimate conclusion to be reached; and in passing upon the question the court must disregard all adverse or contradictory evidence in favor of the party seeking such instruction and must take as true the evidence most favorable to the opposite party and give it all reasonable conclusions and inferences that might be drawn therefrom. In reviewing a proceeding in which a peremptory instruction is involved the appellate courts are bound by the same rule. Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319, 137 A.L.R. 263; Lawson v. Hutcherson, Tex.Civ.App., 138 S.W.2d 131; Barrett v. Commercial Standard Ins. Co., Tex.Civ.App., 145 S.W.2d 315; Lipscomb v. Houston Elec. Co., Tex.Civ. App., 149 S.W.2d 1042; Texas Pacific Coal & Oil Co. v. Wells, Tex.Civ.App., 151 S. W.2d 927, affirmed Wells v. Texas Pacific Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660; Gulf, C. & S. F. Ry. Co. v. Clements, Tex.Civ.App., 203 S.W. 623, pt. 3. International & G. N. Ry. Co. v. Williams, Tex. Civ.App., 160 S.W. 639, pt. 3; Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139, pt. 3.

We are confronted with a statement of facts which includes the testimony of plaintiff as the only witness. In passing upon the question of whether it was proper for the trial court to give the peremptory instruction for the appellees, we will set out some of appellant's testimony which is most favorable to him:

"Q. In the conversation with Mr. Gentry about this building, just state what was said, tell the jury what was said. A. I was on the Roller job and he called me across the street and asked me when I came up what I would do the job for and I told him I would furnish my car and work for $1.50 and hour and 10% on labor. He asked if

that meant brick labor and I said all labor and I started out with Mr. Robinson and he called us back and Mr. Robinson said he said he didn't mind paying me $1.50 an hour but he hated to pay 10% on labor. I did all my work under the same contract. Two weeks later he called me back and asked me when I was going to start to work and I told him I didn't know but I wanted to and I started the next Monday. I didn't get through with the Roller job until then.

"Q. Just what agreement did you have, if any, for work on this building and supervising it? A. The only agreement we had was between Mr. Gentry and me that I supervise and furnish my car for $1.50 an hour and 10% on labor, that's all.

"Q. (propounded by appellees' attorney) Now, tell the jury when you made a deal with Mr. Gentry did he agree to pay you 10% on labor? A. I never told you that, he didn't tell be to go to work then, he told me to come back in two weeks, I know what I did.

"Q. He never agreed to pay you that? A. No but he accepted my proposition.

"Q. What was the 10% you are claiming for as a contractor, you were foreman and supervisor? A. I was both and I did as much at night as I did in the day time, I charged 10% on labor.

"Q. But he never agreed to pay it? A. He came back and told me to go to work and I thought that's what he meant.

"Q. During your work did they pay you $1.50 an hour for actual work? A. Yes, every Saturday, I drew wages every Saturday.

"Q. And you drew wages if you worked? A. Yes.

"Q. How was your commission to be paid? A. Nothing said about it, nothing said about how it would be paid, he always said wait until you finish work then give a bill for the commission.

"Q. When it (the building) was completed did you furnish them a statement of other labor? A. It was all estimated.

"Q. Did you furnish a statement of that? A. Yes, I gave them a statement, but they had done talked to me about it and said it wouldn't go on the bill.

"Q. The items alleged here and these estimated items, was that actual work performed on that building by other workmen? A. Yes, according to this pay roll, I gave them a copy and I kept a copy. I worked mine out by a copy of the pay roll.

"Q. If you estimated the amount of the painting of the building as $300.00, did they pay that? A. Yes they paid that.

"Q. You imagine? A. They paid it.

"Q. You are asking them to give you $30.00 by imagining how much they did pay? A. I said I estimated all this.

"Q. You claim you supervised all this work? A. Yes, I did.

"Q. You kept time on it? A. I didn't keep the painters and tile men. I kept the carpenters, brick laborers and laborers.

"Q. How did you arrive at this estimate sued for? A. Well, you would know if you were a general contractor, you would not be asking these questions, you take a contractor and figure these out, that's why.

"Q. Now, Laurence, I hand you a sheet of paper headed Oil Field Oil Company, I will ask you if this is your record for the week, $2345 of labor performed, what each man did on the job at that time and how much each one had coming to them on that pay roll? A. Yes.

"Q. I will ask you, Laurence, if one of your duties was to keep that pay roll? A. Yes.

"Q. And turn it over to Gentry once a week? A. That's it and I kept a copy.

"Q. Now, in this right-hand column is that the amount of money each man was to get? A. That's the amount of cost all right.

"Q. That is a labor pay roll and what they withheld? 10% on the pay is what they held out for Social Security? A. They had to pay that.

"Q. Does this pay roll show the number of hours and the prices they were to get during that week and you kept the total amount each man was drawing a check for? A. What everybody spent.

"Q. I didn't ask you that, I asked you if this pay roll showed how many men worked that week, number of hours and the total amount due for that week? A. That's right.

"Q. I will ask you if this is the way you kept the pay roll every week? A. I kept it that way every week.

"Q. All right then, you didn't pay these men anything? A. I didn't pay anything.

"Q. You turned it over to the Gentrys and after deductions of Social Security and income tax the checks they gave them the difference for that week's work? A. Yes.

"Q. I ask if each week you kept a similar record showing the men that worked, number of hours, prices and total wages for that week? A. Yes.

"Q. And you did the same thing with reference to yourself? A. That's right.

"Q. Mr. Gentry supervised that job then? A. I was over him, I supervised and told them what to do, I didn't hire or fire any.

"Q. You told Gentry what to do? A. He worked just like any other subcontractor."

There was similar testimony of the plaintiff concerning various items of labor and the amount paid therefor alleged to have been performed in the construction of the building. Appellant also testified that he was a general contractor and had been a contractor for forty years.

■ If the issues as to whether the contract had been made and what sum of money, if any, appellant was entitled to receive as his commission had been submitted to the jury, when measured by the rule laid down by the authorities cited, we are of the opinion that the evidence was sufficient to have justified the jury in finding that a contract was made and that appellant was entitled to recover in some amount for his commission.

■ Appellees say that the instructed verdict was proper on account of the variance in the date it is alleged the contract, if any, was made, and the date the contract, if any, was actually entered into between the parties. Appellant alleged that the contract was made on or about December 6, 1945, but the evidence shows that if a contract was made it was evidently in September, 1945, as appellees exhibited a check

dated September 14, 1945, payable to appellant, which was for labor performed by him in the construction of the building. As a general rule, the burden is upon the one pleading a contract to prove the contract substantially as pleaded, but every variance between the contract pleaded and the proof offered is not a fatal one and a variance in the date is one of the exceptions to this rule, especially under the facts of this case. Appellees did not plead surprise in the lower court. They were not prevented thereby from properly preparing for trial. They knew the time appellant referred to and had the cancelled checks which they had given him for his labor, and the variance in the dates did not result to their prejudice. Our views are supported by the following authorities: Longley v. Caruthers, 64 Tex. 287; Davis, Director General of Railroads, v. Stanford Mill & Elev. Co., Tex.Civ.App., 260 S.W. 1081; Kerr v. Blair, 47 Tex.Civ. App., 406, 105 S.W. 548; Tex.Jur., Vol. 10, p. 523, sec. 304.

Believing that the instructed verdict was improperly given in this case, the judgment of the trial court is reversed and the cause remanded.