**ALLSTATE INSURANCE COMPANY,**
**Defendant-Appellant,**

v.

**Wallace NEUMANN, et al.,**
**Plaintiffs-Appellees.**

**No. 3–1080A306.**

Court of Appeals of Indiana,
Third District.

May 27, 1982.

Arthur A. May, May, Oberfell, Helling, Lorber, Campiti & Konopa, South Bend, for defendant-appellant.

Robert W. Miller, Miller & Miller, Elkhart, for plaintiffs-appellees.

GARRARD, Judge.

On September 29, 1973 Jenny Rivera took a Grand Prix automobile owned by Harry Bates to drive to a local shopping mall. While enroute she lost control and collided with an automobile that was owned and operated by Wallace Neumann. Neumann and his passengers were injured. At the time Bates had automobile liability insurance with United States Fidelity & Guaranty Company (USF & G) and Neumann was insured by Allstate Insurance Company (Allstate).

Neumann sued Rivera for damages. After securing a summary judgment on the question of liability, Neumann accepted an offer of judgment for the injuries to Neumann and his passengers in the total amount of $23,500. Neumann then instituted proceedings supplementary against USF & G claiming coverage under Bates' policy. After hearing, the court determined that Rivera's operation of the vehicle was not insured.[1] Neumann then sought to recover from Allstate pursuant to uninsured motorist provisions in his own policy. The trial court granted summary judgment against Allstate but reduced the judgment amount by $1853 as a setoff of Allstate's subrogation claim for collision and towing payments.

On appeal Allstate contends that USF & G was liable on the Bates policy. It also contends that in any event the summary judgment entered against it was improper.

USF & G and Neumann allege that the court improperly set aside its original entry of judgment against Allstate with the consequence that Allstate's motion to correct errors was filed too late. In addition, Neumann claims the court erred in allowing Allstate the setoff in the summary judgment for uninsured motorist protection.

## I. Owner's Coverage

Bates' policy with USF & G provided that:

> "The following are insureds under Part 1:
>
> (a) with respect to the owned automobile,
>
> (i) the named insured and any resident of the same household . . . ."

The question argued is whether the court properly determined that Rivera was not a resident of Bates' household at the time of the collision.

The facts in evidence disclosed that at the time in question Jenny Rivera was Bates' girlfriend. She was a recipient of C.E.T.A. funds and was attending Ivy Tech vocational school in South Bend. In June 1973 she secured a room at the Y.W.C.A. in South Bend. She paid her rent weekly and retained the room until January 1974. Although the evidence was contradictory as to the length of her relationship with Bates, it clearly appears that it preceded the date of the collision by at least two months and continued thereafter for at least a month. During this period on weekdays she would attend classes at Ivy Tech. When she returned to the Y.W.C.A. in the evening Bates would usually pick her up and they

---

1. In addition to the coverage question discussed herein, the court determined that at the time of the collision Rivera was not driving with the consent of Bates. No error has been raised or argued concerning that determination. Accordingly, no further mention is made of this ground for coverage.

would go to his home in Elkhart.[2]. Although she might have stayed overnight on a few of these occasions, Bates would normally return her to the Y.W.C.A. the same night so that she would be ready to attend her classes the following morning. The testimony was, however, without conflict that during this period she spent the weekends with Bates. She testified that she kept clothing both at the Y.W.C.A. and at Bates' house. Bates also testified that when she was with him she would sometimes cook their meal. At trial Rivera testified that she considered she was living at Bates' house. Other evidence was introduced that after the collision both she and Bates had given statements to the effect that she was not a resident of Bates' house.

In its findings the trial court concluded that on the date of the collision Rivera was a resident of the Y.W.C.A. and Bates was the sole member of his household. Accordingly, the court determined that USF & G was not liable on its policy.

Initially, we note our agreement with appellant's assertion that the term "resident" had no fixed or precise meaning in the law. It is an amorphous term that, as one court observed, has as many colors as Joseph's coat. *Weible v. United States* (9th Cir. 1957), 244 F.2d 158.

At one end of the scale it may be used to refer to domicile. In such instances, once acquired it may be maintained although physical presence is elsewhere. *Bd. of Medical Registration v. Turner* (1960), 241 Ind. 73, 168 N.E.2d 193.

At the opposing extreme the term refers to actual presence and is broad enough to include transients. *Bd. of Medical Registration, supra* ; 25 *Am.Jur.2d Domicile* § 4.

When used as a term to distinguish from both transient status and domicile, "resident" may be said to refer to one having a fixed abode but only for the time being.

As such the term involves a subjective element of intent. *Guessefeldt v. McGrath* (1952), 342 U.S. 308, 72 S.Ct. 338, 96 L.Ed. 342; *Stadtmuller v. Miller* (2nd Cir. 1926), 11 F.2d 732, 45 *A.L.R.* 895.

It follows that at least for some purposes a person may have more than one residence.

As a consequence of these considerations courts have long held that to determine the meaning of the term "resident" we must look to both the context in which the term is used and the purpose of the statute (or instrument) in which it is employed. *Stadtmuller v. Miller* (2nd Cir. 1926), 11 F.2d 732, 45 *A.L.R.* 895; 25 *Am.Jur.2d Domicile* § 4.

As a corollary, decisions construing the term in insurance policies have applied to it the rule of construction which favors coverage of the insured.[3] Thus, the term is to be given its broad meaning in the so-called "extension" cases, and is construed narrowly in "exclusion" cases. *Aetna Cas. & Sur. Co. v. Miller* (D.C.Kan.1967), 276 F.Supp. 341; *Tencza v. Aetna Cas. & Sur. Co.* (1974), 21 Ariz.App. 552, 521 P.2d 1010; *Mazzilli v. Accident & Cas. Ins. Co.* (1961), 35 N.J. 1, 170 A.2d 800; *Cal-Farm Ins. Co. v. Boisseranc* (1957), 151 Cal.App.2d 775, 312 P.2d 401. We agree in the soundness of this doctrine with the traditional caveat that in choosing a broad or narrow construction of a word or phrase the choices are limited to the *reasonable* interpretation of the term as used.

Here the policy purports to insure, with respect to the owned automobile, the named insured (Bates), any resident of the same household, or any other person using the automobile with the permission of the named insured.[4]

A household may be defined as consisting of those who dwell under the same roof and compose a family; a domestic establish-

---

2. It is undisputed that there were no other residents of the house in Elkhart.

3. For an Indiana decision recognizing the general rule, *see United States Fidelity & Guaranty Company v. Baugh* (1970), 146 Ind.App. 583, 257 N.E.2d 699.

4. Thus, the named insured may readily bestow coverage by consenting to the use of the automobile. The implication is that coverage afforded to residents of the insured's household is intended to reach situations not covered by the consent provision.

ment. *Websters New International Dictionary, Unabridged,* 2nd Ed. The term has been said to be synonymous with "family" but broader, in that it includes servants or attendants; all who are under one domestic head. *Engebretson v. Austvold* (1937) 199 Minn. 399, 271 N.W. 809, 810. It is not restricted to relatives by blood or marriage.

In *Barrett v. Commercial Standard Ins. Co.* (Tex.Civ.App.1940), 145 S.W.2d 315 the court observed that the evident purpose of an insurer in providing an exclusion clause for members of the insured's household in its provisions covering theft of an automobile was to guard against liability when the theft should be committed by one having unrestricted access to the home and its contents, including keys to the automobile. We can identify the same general purpose in the inclusion clause before us: to provide coverage to persons having unrestricted access to the home and its contents. Yet the *Barrett* court held that this did not *as a matter of law* exclude coverage where the thief was a nephew who had been aided by the insured and on the day in question was in the house by invitation.

Similarly, we believe there existed in the case at bar factual questions concerning whether Jenny Rivera was a resident of Bates' household on the date of the collision. More than physical presence was necessary to make her a resident of the household. There was additionally a subjective element of intent. *See Stadtmuller, supra.*

We believe the evidence was sufficient that the trial court could have determined that she met the requirements for coverage under the policy. The issue then is whether it was required to do so.

The burden was on Neumann in the proceeding supplemental to establish his rights to coverage under the policy. *Hinds v. McNair* (1955), 235 Ind. 34, 129 N.E.2d 553. He suffered a negative judgment and on appeal we may not reverse unless the evidence without conflict leads unerringly to the conclusion opposite that reached by the trial court. We cannot say that this standard for reversal has been met.

While Rivera testified at trial that she considered Bates' home to be her residence, evidence of prior statements given by both Rivera and Bates asserted she did not reside at his house. At trial Bates testified he lived at the house alone and then corrected this to include Rivera. The evidence was conflicting as to how long Rivera visited Bates' house both before and after the collision. While the evidence of Rivera's living habits was susceptible to the conclusion that she was a resident of Bates' household, it certainly did not command that conclusion. Finally, we note that at trial Bates testified that he expressly told Rivera not to drive the auto and that he left the house before she did. On the other hand, she testified that she had Bates' permission to drive the car; that she left before he did; and that, indeed, he had been following behind her but stopped at a service station. Thus, the court was confronted with a substantial credibility problem concerning these witnesses.

From all this the court could properly have concluded that the burden of proof had not been met. We therefore affirm the determination that USF & G was not liable on its policy.

## II. Uninsured Motorist Judgment

After the trial court determined that USF & G was not liable on the judgment against Rivera, Neumann proceeded against Allstate asserting uninsured motorist coverage. On January 22, 1980, the court granted summary judgment against Allstate. Allstate, however, did not learn of the judgment until April 9, 1980. It then moved for relief pursuant to Indiana Rules of Procedure, Trial Rule 60, which the court granted. When the court reentered judgment, Allstate filed a motion to correct errors and subsequently perfected this appeal.

USF & G and Neumann now contend it was error for the court to have set aside its original entry of judgment. Accordingly, they say that Allstate forfeited its right to appeal the grant of summary judgment.

Allstate replies that by failing to assign cross errors asserting this contention, it is USF & G and Neumann who have lost their right to appellate review.

The 1980 amendments to Trial Rule 59 became effective January 1, 1980, prior to the proceedings in question. These amendments deleted the prior specific reference to assigning cross errors. Under the 1980 version TR 59(F)(1) permitted parties opposing a motion to correct errors to file a statement in opposition to the motion. TR 59(F)(2) then provided:

"If a motion to correct error is denied, the party who prevailed on that motion may, in his appellate brief and without having filed a statement in opposition to the motion to correct error in the trial court, first assert grounds entitling him to relief in the event the appellate court concludes that the trial court erred in denying the motion to correct error. If the appellate court reverses the judgment of the trial court, nothing in these Rules or the Appellate Rules precludes the appellate court from determining that the appellee is entitled to any alternative relief which the appellee has requested."

The intendment of these modifications was to simplify the process of bringing all relevant issues before the appellate court once a motion to correct errors had been properly addressed to the trial court. *See P–M Gas & Wash Co., Inc. v. Smith* (1978), 268 Ind. 297, 375 N.E.2d 592.

We note that the rule was further amended in 1981. These amendments basically consisted of reorganizing the sections and TR 59(F)(2) became TR 59(G). In addition, the section was amended to expressly provide that the party who prevailed on the motion to correct errors in the trial court could "defend against the motion to correct error on any ground."[5]

We believe this latest amendment was intended to clarify the meaning of the section rather than change it. However, we need not so hold at this time since we find that the trial court did not abuse its discretion in granting Allstate's motion.

It appears that through inadvertence or mistake the parties were not notified of the entry of the summary judgment of January 22, 1980. The judge was a special judge appointed after the previous judge to whom the summary judgment had been submitted had been disqualified for failure to rule.

In ruling upon Allstate's motion the trial court was invested with equitable discretion. *Soft Water Utilities, Inc. v. LeFevre* (1973), 261 Ind. 260, 301 N.E.2d 745.

USF & G and Neumann assert it was error to grant the motion because TR 72(D), which requires the clerk to give notice to the parties, provides in part:

"Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted by the Appellate Rules."

The language of this rule does not per se preclude relief. *Soft Water Utilities, supra; Brendonwood Common v. Kahlenbeck* (1981), Ind.App., 416 N.E.2d 1335. Since the question is one of equitable discretion, on appeal the party asserting error must demonstrate an abuse of discretion; that the court's conclusion was clearly against the logic and effect of the circumstances. *First Nat. Bank etc. v. Coling* (1981), Ind. App., 419 N.E.2d 1326.

As pointed out by USF & G and Neumann, the record before us does not disclose that anyone did anything to affirmatively mislead Allstate. *See Soft Water Utilities, supra; First Nat. Bank, supra.* On the other hand, Allstate promptly filed its motion for relief upon learning of the

---

**5.** In full TR 59(G) now provides:

"(G) Denial of motion to correct error, and assertion of grounds for relief. If a motion to correct error is denied, the party who prevailed on that motion may, in his appellate brief and without having filed a statement in opposition to the motion to correct error in the trial court, defend against the motion to correct error on any ground and may first assert grounds entitling him to relief in the event the appellate court concludes that the trial court erred in denying the motion to correct error. If the appellate court reverses the judgment of the trial court, nothing in these Rules or the Appellate Rules precludes the appellate court from determining that the appellee is entitled to any alternative relief which the appellee has requested."

entry and did so less than three weeks after the motion became overdue. Neither Neumann nor USF & G filed any statement in opposition to the motion and they have not attempted to establish on appeal any prejudice occurring to them apart from Allstate's ability to perfect its appeal. We conclude they have failed to demonstrate an abuse of discretion in the granting of Allstate's TR 60 motion.

■ We turn then to the propriety of the summary judgment against Allstate. It urges the judgment was improper for two reasons. First, it points out that the documents which accompanied the motion were neither certified nor verified as required by TR 56(E). It argues there was a failure to establish the lack of a genuine issue of fact or that the movant was entitled to judgment as a matter of law. Secondly, it urges that the judgment in *Neumann v. Rivera* was not res judicata so as to establish its liability to Neumann.

Neumann argues that we should invoke the doctrines of waiver or harmless error to preclude Allstate from relying on TR 56(E). He relies upon *Vernon Fire and Casualty Ins. Co. v. Matney* (1976), 170 Ind.App. 45, 351 N.E.2d 60 to contend that Allstate is bound by his judgment against Rivera.

In *Vernon* the court considered our prior decisions in *Indiana Insurance Co. v. Noble* (1970), 148 Ind.App. 297, 265 N.E.2d 419 and *Smith v. Midwest Mutual Ins. Co.* (1972), 154 Ind.App. 259, 289 N.E.2d 788 and the problems inherent in the conflict between an insured and his insurance company over uninsured motorist claims. Judge Lybrook writing for the court observed that in such situations the insured has four possible options. In the first two he could commence an action against the insurer, either joining or not joining the uninsured motorist. All issues of liability and damages could then be litigated and the insurer would clearly be bound by the result.

The insured's other two options entail bringing an action against the uninsured motorist without naming the insurer as a party. In the third option the insured could give preliminary and adequate notice of the filing and pendency of the action to the insurer so that it might take appropriate action to protect its interests. In the fourth option the insured could sue the uninsured motorist without notifying the insurer, and clearly the insurer would not then be bound by the judgment obtained.

Directing its attention to the third option the *Vernon* court held that (1) in such situations the insurer had a right to intervene in the lawsuit, protect its interests and be bound by the judgment; and (2) if, having been properly notified, the insurance company elected to not intervene, it should nevertheless be bound by the judgment. The court expressed two reasons for this result: waiver arising from the insurer's failure to utilize its right to intervene, and the language of the insurance contract and the statute requiring companies to provide uninsured motorist coverage.[6]

Allstate urges us to distinguish *Vernon* because in *Vernon* it was clear that the plaintiff was claiming uninsured motorist protection and was seeking the participation of the insurer in the litigation. On the facts before us Neumann contended Rivera was an insured motorist through the proceedings supplemental, although the unverified exhibits to his motion for summary judgment indicate that the question of uninsured motorist coverage was raised at an earlier time.

We agree with Allstate in part. We believe *Vernon* does provide the applicable standard for determining whether Allstate is bound by the judgment Neumann secured against Rivera. The question to be determined is whether Allstate was given "preliminary and adequate notice of the filing and pendency of such action . . . so that [it might] take appropriate action including in-

---

**6.** IC 27–7–5–1 requires the insurer to offer coverage in the statutory amounts "for the protection of persons insured thereunder who are legally entitled to recover damages from own- ers or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

tervention." 351 N.E.2d at 63. The determination is fact oriented. It is further complicated by Neumann's failure to comply with the requirements of TR 56(E) concerning the materials submitted with his motion for summary judgment. We cannot accept Neumann's assertion that when Allstate failed to object to the form of the materials before the summary judgment was entered it thereby waived the error or rendered it harmless. *See Otte v. Tessman* (1981), Ind., 426 N.E.2d 660. Even if the court had considered the documents to be what they purported to be, nothing in the record before the court established that they were sent, received or constituted all communication on the issue.

We are forced to conclude that on the record before the court there was a genuine issue of material fact and summary judgment was inappropriate. If Allstate had adequate and timely notice that there was a genuine, if conditional, claim being made under its uninsured motorist clause under circumstances where it could have taken appropriate action, including intervention, to protect its interests, then it is bound by the judgment rendered. If it did not, it was not bound. *Vernon, supra.*

 Finally, we consider the contention that it was improper to set off against the uninsured motorist liability $1853 representing payments made to Neumann under the collision and towing provisions of his policy. Allstate again contends the issue was waived by the failure to assign cross errors. Under the 1980 amendment to TR 59 we disagree. TR 59(F)(2) expressly authorized Neumann in his appellate brief to "first assert grounds entitling him to relief in the event the appellate court concludes that the trial court erred in denying the motion to correct error."

We need address only the assertion that it was contrary to Indiana law to permit such a setoff. Of course, Allstate has its contractual subrogation right against Rivera. We believe, however, that our decisions in *Capps v. Klebs* (1978), Ind.App., 382 N.E.2d 947 and *Leist v. Auto Owners Ins. Co.* (1974), 160 Ind.App. 322, 311 N.E.2d 828,

as well as Judge Dillin's decision in *Simpson v. State Farm Mutual Automobile Ins. Co.* (S.D.Ind.1970), 318 F.Supp. 1152 clearly dictate that under the Indiana statute's establishment of *minimum* protection the setoff is not allowable. Allstate may not reduce its liability under the uninsured motorist requirements by virtue of its subrogation rights concerning payments made under the collision and towing provisions of its policy.

Accordingly, the judgment denying recovery against USF & G is affirmed. The summary judgment against Allstate is reversed. Cause remanded for further proceedings consistent herewith.

HOFFMAN, P. J., and STATON, J., concur.