**AETNA CASUALTY & SURETY COMPANY, Appellant,**

and

**Christopher Alan Bippus, Wilburn J. Schmidt, and Nettie Schmidt,**

v.

**Charles CRAFTON and Emma Crafton, Appellees.**

No. 82A01–8910–CV–421.

Court of Appeals of Indiana, First District.

March 27, 1990.

James D. Johnson, Ross E. Rudolph, Mattingly, Rudolph, Fine & Porter, Evansville, for appellant.

Robert John, Robert John & Associates, Evansville, for appellees.

BAKER, Judge.

## STATEMENT OF THE CASE

Intervenor-appellant, Aetna Casualty & Surety Company (Aetna), appeals a negative judgment entered on its complaint for declaratory judgment.

We reverse.

## STATEMENT OF THE FACTS

Defendant, Christopher Alan Bippus (Chris), is the natural son of Michael A. Bippus (Michael) and Rita J. Bippus (Rita) whose marriage ended in divorce in 1982. Pursuant to the final decree of dissolution, Michael and Rita have joint custody, care, and control of Chris and his two brothers. Rita does not pay support and Michael is entitled to claim the applicable tax exemptions for the three children. Michael retained ownership of the marital residence while Rita maintains a one-bedroom apartment. Following Michael and Rita's 1982 divorce, Chris and his two brothers continuously resided at Michael's residence except for overnight visits to Rita's apartment approximately once every six weeks. These visits never exceeded more than one night and occurred only during weekends. Chris did not have a key or unlimited access to Rita's apartment and he did not keep any clothes at her residence.

On August 28, 1986, Chris left Michael's residence in his father's car to pick up his stepsister at school. On his way to the school, Chris was involved in an automobile accident with plaintiff-appellee, Charles Crafton, resulting in serious injury to Mr. Crafton. At the time of the accident, Rita had a "Personal Auto Policy" with Aetna. Rita was the named insured on the policy and her automobile was listed as the covered auto. Chris was not listed as an insured on Rita's policy and the automobile he was driving at the time of the August 28 accident was not listed on the policy as an insured vehicle. Chris listed his residence on the accident report as Michael's residence.

Charles and Emma Crafton (the Craftons) filed a complaint for damages against Chris. Aetna's subsequent motion to intervene was granted by the trial court and Aetna filed a complaint for declaratory judgment against Chris and the Craftons. Aetna sought a determination that Chris was not a person insured pursuant to the terms of Rita's automobile insurance policy with Aetna. After considering oral argument of counsel, the pleadings and authorities cited therein, the documentary exhibits attached to the pleadings, the depositions of Chris and Rita, and the facts stipulated to by the parties, the trial court entered a general judgment denying Aetna's claim for declaratory relief. Aetna appeals.

## ISSUE

The parties agree that this appeal raises the following issue:

Whether Chris was a resident of Rita's household at the time of the accident thereby making him an insured person pursuant to the terms of Rita's automobile insurance policy with Aetna.

## DISCUSSION AND DECISION

Aetna appeals a negative judgment. To be successful, it must establish that the judgment is contrary to law. *Sherk v. Indiana Waste Systems, Inc.* (1986), Ind. App., 495 N.E.2d 815, *trans. denied*. Because this case was decided on stipulated facts and depositions, this court must determine whether the facts presented to the trial court support its judgment. *Indiana Bank & Trust Co. v. Lincoln Nat'l Bank & Trust Co.* (1965), 137 Ind.App. 546, 206 N.E.2d 879. "Where the evidence is entirely documentary or the decision is based upon admission or stipulation, the Appellate Tribunal is in as good a position as the trial court to determine its force and effect." *Id.* 137 Ind.App. at 553, 206 N.E.2d at 884 (citations omitted).

In determining whether the trial court's decision was contrary to law, this

court must determine whether Aetna was denied the relief it was entitled to under the evidence. *Id.* "If the undisputed evidence entitles the one who has the burden of proof to a verdict which has been denied him, such verdict is contrary to law." *Id.* (citing *Hinds, Executor, etc. v. McNair, et al* (1955), 235 Ind. 34, 41, 129 N.E.2d 553, 558). To determine whether a judgment is contrary to law, this court will consider only the evidence most favorable to the prevailing party, together with all reasonable inferences arising therefrom. *Id.* A negative judgment will be set aside as contrary to law only when the evidence is without conflict and all reasonable inferences to be drawn therefrom lead to but one result and the trial court has reached a different one. *Salmon v. Perez* (1989), Ind.App., 545 N.E.2d 21. This court will presume a general judgment of the trial court is based on findings supported by the evidence. *General Plating & Eng'g, Inc. v. Syn Indus.* (1985), Ind.App., 472 N.E.2d 1290. "When we review a general finding of the trial court we must affirm if it is sustainable on any legal theory which is supported by the evidence." *Id.* at 1292.

The liability coverage portion of Rita's insurance policy provides: "We [Aetna] will pay damages for bodily injury or property damage for which any *covered person* becomes legally responsible because of an auto accident." *Record* at 43 (emphasis in original). A covered person is defined in the policy as: "You (Rita) or any *family member* for the ownership, maintenance or use of any auto or *trailer.*" *Id.* (emphasis in original). Pursuant to the definitions set forth in the policy, a family member "means a person related to you [Rita] by blood, marriage or adoption who is a resident of your [Rita's] household. This includes a ward or foster child." *Record* at 42. It is undisputed that Chris is related to Rita by blood. The question, therefore, is whether Chris was a resident of Rita's household at the time of the accident.

Aetna argues the trial court's decision is contrary to law because the evidence presented leads unerringly to the conclusion that Chris was not a member of Rita's household and the trial court reached the opposite conclusion. The Craftons respond that Chris was a member of Rita's household because she had legal custody of him pursuant to the joint custody provisions of the divorce decree.

■ As an initial matter, we note that in construing the term "resident" in insurance policies, it is given its broad meaning in "extension" cases, and is construed narrowly in "exclusion" cases. *Allstate Ins. Co. v. Neumann* (1982), Ind.App., 435 N.E.2d 591. The case before us is an extension case because it involves the question of whether coverage should be extended beyond the named insured. Thus, the term "resident" will be given its broad meaning "with the traditional caveat that in choosing a broad or narrow construction of a word or phrase the choices are limited to the *reasonable* interpretation of the term as used." *Id.* at 593 (emphasis in original).

■ Indiana has had two occasions to interpret the meaning of the term "resident" in automobile liability insurance policies. *Johnson v. Payne* (1990), Ind.App., 549 N.E.2d 48; *Allstate supra.* In determining the meaning of the term, consideration must be given to the context in which the term is used and the purpose of the instrument in which it is employed. *Id.* In order to be a resident of a household, more than physical presence is necessary. *Id.* "The term also incorporates a subjective element of intent and reflects the contracting parties' desire to provide coverage to persons having unrestricted access to the insured's home and its contents." *Johnson*, 549 N.E.2d at 50. A motorist's residence is determined by considering all of the evidence indicative of his living habits.

■ Although neither *Johnson* nor *Neumann* involved a non-custodial parent/child relationship, the general principles espoused in those cases are adequate to guide us in the disposition of the present case. The undisputed evidence in the record reveals that Chris's physical presence in Rita's household was minimal. He never stayed more than one night at a time and the depositions reveal that Chris and

his mother had an impromptu arrangement. That is, the overnight visits were not prearranged or pursuant to a visitation schedule and Chris would sleep in a sleeping bag. In addition, neither Chris's nor Rita's subjective intent supports the notion that Chris was a resident of Rita's household. Chris testified in his deposition that he and his brothers stayed with Michael most of the time and stayed overnight with Rita only "sometimes. Not very often.... Just when I feel like it." *Record* at 71. Similarly, Rita testified in her deposition that although she and Michael had joint custody, the children lived with their father. Chris would stay with her "maybe once every six weeks or not as often, or whenever he wants to." *Record* at 138. Rita testified that when obtaining automobile insurance, she listed herself only and never listed Chris. Further, Chris had never driven her automobile. There was no evidence to support an inference that Rita desired "to provide coverage to persons having unrestricted access to [her] home and its contents." *See Johnson,* 549 N.E.2d at 50.

Given the absence of any evidence that Chris was a resident of Rita's household, the only way to support the trial court's determination is to find that the joint custody decree was enough alone to establish Chris's residency in Rita's household. We cannot make such a finding. Indiana has not confronted this question directly, but courts in other jurisdictions have looked beyond the terms of the custody decree and determined residency based on the child's living habits with both parents. *See, e.g., Alava v. Allstate Ins. Co.* (1986), Fla.Dist. Ct.App., 497 So.2d 1286 (child was resident of both of his divorced parents' households for insurance purposes, where despite divorce decree, child regularly lived with father on weekends and mother during the week and child testified he lived with both parents); *Pierce v. Aetna Casualty & Sur. Co.* (1981), 29 Wash.App. 32, 627 P.2d 152 (child who lived with mother and did not stay at his father's house on a regular or frequent basis, was not resident of father's household); *Cal–Farm Ins. Co. v. Boisseranc* (1957), 151 Cal.App.2d 775, 312 P.2d 401 (despite joint custody and child's temporary absence from father's home at time of accident to live with mother, child was resident of father's household because he spent three-fourths of his time living with his father and had continuing relationship with his father for purposes of residency).

We agree with the California court's statement in *Cal–Farm* that "[i]t is certainly obvious that the terms of the custody decree are not controlling as a matter of law." *Id.* 312 P.2d at 405. Rather, the residence of a child of divorced parents must be determined by an evaluation of the unique facts of each case. In the present case, Chris's visits with his mother were sporadic and irregular. Chris's own testimony was that he lived with his father. Further, at the time of the accident, Chris was living with his father. Despite the joint custody decree, there was no evidence before the trial court to indicate Chris was a resident of Rita's household. The trial court's decision that Chris was a resident of Rita's household based on the joint custody decree is, therefore, contrary to law.

As a final matter, we note the Craftons argument that the joint custody provisions of IND.CODE 31–1–11.5–21(f) and (g) are evidence of Michael and Rita's intentions concerning their relationship with their children at the time they entered the divorce decree. The Craftons argument is without merit because the provisions of IND.CODE 31–1–11.5–21(f) and (g) were added by amendment which was not effective until June 1, 1983, while the divorce decree was entered into on June 30, 1982.

The trial court's judgment is reversed and the cause remanded with instructions to enter declaratory judgment in favor of Aetna.

RATLIFF, C.J., and ROBERTSON, J., concur.