**Bradley E. ALEXANDER, individually and as the assignee of Theodore E. Seifert, Plaintiff–Appellant,**

**v.**

**ERIE INSURANCE EXCHANGE, Defendant–Appellee.**

No. 91–3690.

United States Court of Appeals, Seventh Circuit.

Argued May 27, 1992.

Decided Jan. 5, 1993.

---

Carl N. Martin, II (argued), Philadelphia, PA, John H. Caress, Indianapolis, IN, for plaintiff-appellant.

Robert A. Smith (argued), Michael P. Bishop, Bishop, Smith & Bishop, Indianapolis, IN, Walter J. Timby, Jr., Timby, Brown & Timby, Philadelphia, PA, for defendant-appellee.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

RIPPLE, Circuit Judge.

This is an appeal from a grant of summary judgment for the defendant, Erie Insurance Exchange (Erie), on a claim of improper failure to defend and indemnify under the provisions of an automobile insurance policy issued by Erie. The district court held that the plaintiff was not covered by the policy. For the reasons that follow, we affirm.

## I

### BACKGROUND

On April 6, 1985, Theodore Seifert was driving his father's truck in Birmingham Township, Pennsylvania, when he lost control of the vehicle and struck a telephone pole. As a result of the accident, Bradley Alexander, who was a passenger in Seifert's truck at the time, suffered serious injuries. Subsequently, Mr. Alexander

brought a civil action against Seifert in the Court of Common Pleas of Delaware County, Pennsylvania. He alleged that he was injured because of Seifert's negligence.

At the time of the accident, Seifert was living with his father in Pennsylvania. Seifert was under twenty-one years of age and, with the exception of the five months immediately prior to the accident, he had always lived with his mother in Indiana.[1] After the accident, Seifert continued living with his father in Pennsylvania for two months. He then returned to live with his mother in Indiana. Seifert claims that he had always intended the stay with his father to be temporary. Seifert's federal and state income tax forms for the year 1985, which he filed in February 1986 after he moved back to his mother's home, claimed his residence as his mother's house in Carmel, Indiana. He notes that, during the time he lived with his father, he retained complete access to his mother's home and stayed in frequent contact with her. He visited Indiana only once during the five-month period. Additionally, Seifert had a full-time job and obtained a Pennsylvania driver's license while living with his father. Seifert's father carried insurance on the truck; however, the liability coverage for personal injuries was limited to $100,000. Therefore, in addition to notifying his father's insurance company, Seifert notified Erie, which was his mother's automobile insurance carrier in Indiana. Erie refused to defend the lawsuit on the ground that Seifert was not covered by the policy. The state civil action brought by Mr. Alexander was settled before trial and a judgment against Seifert was entered in the amount of four million dollars. Thereafter, Seifert assigned to Mr. Alexander all rights he had against Erie. Mr. Alexander initially filed the present action against Erie in the federal district court for the Eastern District of Pennsylvania. Invoking the diversity juris-

diction of the court under 28 U.S.C. § 1332, he alleged that Erie had negligently failed to settle his claim against Ted Seifert. *See American Family Mut. Ins. Co. v. Kivela,* 408 N.E.2d 805, 812–13 (Ind.App.1980) (absent fraud or collusion, if an insurance company wrongfully refuses coverage it may be held responsible for any underlying judgment resulting from the insured defending himself).

Erie moved to have the trial transferred to Indiana. *See* 28 U.S.C. § 1404(a). It argued that the convenience of the parties and witnesses and the public interest would best be served by the transfer. Specifically, Erie noted that Indiana law governed the dispute, Seifert's physicians and medical records were in Indiana, and several key witnesses as to whether or not Ted Seifert was residing with his mother in Carmel, Indiana were in Indiana. The Pennsylvania district court granted the motion, 1990 WL 6127. Subsequently, the Indiana district court granted summary judgment for Erie. It determined that, as a matter of law, Seifert was not a resident of his mother's household and thus was not covered by the policy.[2]

The policy in dispute was issued by Erie to Seifert's mother, Geraldine Seifert, and was in force when the accident injuring Mr. Alexander occurred. The policy provided coverage for the "named-insured" (Ms. Seifert), for "relatives," while they were driving a car insured by Erie, and for accidents involving "non-owned" vehicles[3] when "relatives" of the insured are driving them. Seifert was not driving a vehicle insured by Erie at the time of the accident. Thus, the issue of coverage turns upon whether Seifert was either a "named-insured" or a "relative" under the terms of the Erie policy. "Relative" is defined in the definitions section of the policy as a relative or ward "if a resident of [the policy holder's] house-

---

1. Seifert had spent one year in college at Vincennes University in Indiana. During that time he retained his official residence at his mother's home. -

2. Because Mr. Alexander could be assigned no greater rights than Seifert had, Mr. Alexander's claim was completely dependent upon Seifert's

coverage. *See Essex v. Ryan,* 446 N.E.2d 368, 374 (Ind.App.1983) (legal causes of action are generally assignable and place the assignee in an identical position to that of the assignor).

3. "Non-owned" vehicles are those not owned by the "named-insured."

hold." Prior to Seifert's stay in Pennsylvania, he was named in the Erie policy as a member of his mother's household. A Revised Declarations Endorsement effective January 4, 1985 reflected Ms. Seifert's request to have her son's name removed from the policy, making her the sole named driver. The change caused an annual reduction of thirty-seven dollars in Ms. Seifert's premium. However, Mr. Alexander disputes the effect of the Revised Declaration Endorsement. Specifically, he contends that there is a genuine issue of material fact whether it was signed by an authorized Erie agent.

## II

### DISTRICT COURT PROCEEDINGS

The district court for the Southern District of Indiana granted summary judgment for Erie. Applying Indiana law, the court noted that summary judgment cannot be granted if any genuine issue of material fact exists. The court then acknowledged that the linchpin of the present dispute is whether Seifert resided in his mother's household within the terms of the policy. Because Ted Seifert was not listed on the policy at the time of the accident and in fact had been specifically removed from the policy previously, the district court concluded that the burden to prove coverage was on Mr. Alexander. The district court set out the facts supporting the assertion that Seifert resided in his mother's home in Indiana and the facts supporting the assertion that he resided in Pennsylvania with his father. The court then engaged in a detailed analysis of the Indiana decisions directly on point and concluded:

> Indiana ... determines residence by considering: (1) physical presence (intending to have a fixed abode for the time being, to dwell under the same roof and compose a family); (2) the unrestricted access to the insured's home and its contents; (3) the intent of the contracting parties to provide coverage; and (4) the totality of the evidence.

Mem.Op. at 19. Applying the facts to the above framework, the district court held that "considering the totality of the evidence, ... as a matter of law, the facts cannot support a finding that Seifert was a resident of his mother's household during the relevant time period." Mem.Op. at 2.

Mr. Alexander presently asserts three legal claims: (1) the district court in Pennsylvania erred in transferring the action to Indiana, (2) the Indiana district court erred in concluding that Ted Seifert had been effectively removed as a named-insured from the Erie policy, and (3) the Indiana district court erred in finding, as a matter of law, that Seifert was not a resident of his mother's household on the date the accident injuring Mr. Alexander occurred.

## III

### ANALYSIS

*A. Transfer under 28 U.S.C. § 1404(a)*

As a preliminary matter, Mr. Alexander submits that the district court sitting in the Eastern District of Pennsylvania abused its discretion when it transferred the present action to the Southern District of Indiana. He argues that the plaintiff's choice of forum is entitled to great deference and should not have been disturbed.[4] We need not, and indeed cannot, reach the merits of this contention. Our case law makes clear that we cannot review the decision of a court in another circuit to transfer a case to a district court in this circuit. We may review such a transfer only if a party moves, in the transferee court in this circuit, to retransfer the case. *National–Standard Co. v. Adamkus*, 881 F.2d 352, 356 (7th Cir.1989); *Illinois Tool Works, Inc. v. Sweetheart Plastics*, 436 F.2d 1180, 1187–88 (7th Cir.), *cert. dismissed*, 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722 (1971); *Purex Corp. v. St. Louis Nat'l Stockyards Co.*, 374 F.2d 998, 999–1000 (7th Cir.), *cert. denied*, 389 U.S. 824, 88 S.Ct. 59, 19 L.Ed.2d 77 (1967). The

---

**4.** Mr. Alexander does not dispute that the present action could have been initiated in the Southern District of Indiana.

record reflects that no such motion was made in the United States District Court for the Southern District of Indiana. Accordingly, the matter is beyond our review.

### B. Summary Judgment

■ We review de novo a district court's decision to grant summary judgment. The evidence, when taken in the light most favorable to Mr. Alexander, the nonmovant, must be such that there is no genuine issue of fact and Erie is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Anderson v. Stauffer Chem. Co., 965 F.2d 397, 400 (7th Cir.1992). Both parties agree that Indiana law governs the interpretation of Ms. Seifert's insurance policy. Accordingly, we apply the substantive law of Indiana, the forum state. See Trans-America Ins. Co. v. South, 975 F.2d 321, 327 (7th Cir.1992) (in diversity cases, absent party challenge to choice of law, governing law is that of the forum state); Wood v. Mid–Valley, Inc., 942 F.2d 425, 426–27 (7th Cir.1991) (same).

■ The insured has the initial burden of proving coverage under an insurance policy. South Bend Escan Corp. v. Federal Ins. Co., 647 F.Supp. 962, 966 (N.D.Ind. 1986); Allstate Ins. Co. v. Neumann, 435 N.E.2d 591, 594 (Ind.Ct.App.1982). Mr. Alexander correctly notes that, under the law of Indiana, ambiguities in insurance policies are generally construed against the policy drafter, and an interpretation yielding coverage is favored. Id. at 593. However, if no ambiguity exists the policy will not be interpreted to provide greater coverage than the parties bargained for themselves. Additionally, policies will not be given an unreasonable interpretation in order to provide added coverage. See Eli Lilly v. Home Ins. Co., 482 N.E.2d 467, 470 (Ind.1985) (contracts for insurance are subject to ordinary rules of contract interpretation and should be given their plain and ordinary meaning).

Mr. Alexander argues that the district court erred in weighing the evidence and determining that there was no genuine issue of material fact. Specifically, Mr. Alexander asserts that there were two genuine material disputes that should have foreclosed summary judgment as a matter of law. First, he argues that there was evidence of record to support the conclusion that Mr. Seifert was actually named in the policy as a resident of his mother's household at the time of the accident. Additionally, he argues that, even if Ted Seifert's name had been removed from the policy, the record supports a finding that he was still a resident of his mother's household because it was his legal domicile.

### C. Named-insureds Under the Erie Policy

Prior to the accident, Ms. Seifert last had renewed the Erie policy in December 1984 and, at that time, Ted Seifert appeared as a named driver on the continuation notice. Subsequently, a Revised Declarations Endorsement, with an effective date of January 4, 1985 was executed at the request of Ms. Seifert. Mr. Alexander argues that this Declaration required the signature of an authorized Erie agent to be valid and that a genuine material dispute exists as to the authenticity of the signed Declaration produced by Erie in response to a supplemental discovery request. Mr. Alexander bases this contention primarily upon the fact that Erie did not produce a signed document earlier in the discovery process and suggestions that the typesets on the document Erie produced and Ms. Seifert's copy appeared to be different. In response, Erie produced an affidavit from Theresa Huzinec, a supervisor in the Auto Product Development Department of Erie, who attested that the document was authentic.[5] The district court accepted the

---

5. Mr. Alexander has argued that Huzinec's affidavit is inadmissible hearsay under Rule 803(6) of the Federal Rules of Evidence. Because Mr. Alexander failed to raise this contention in the district court, he has effectively waived appellate review of the issue. See Snider v. Consolidation Coal, 973 F.2d 555 (7th Cir.), cert. filed (U.S. Nov. 23, 1992) (No. 92–892); United States v. Wynn, 845 F.2d 1439, 1442 (7th Cir.1988) ("To preserve an issue for appellate review, a party

Huzinec affidavit because Mr. Alexander had presented no admissible evidence discrediting it and Ms. Seifert accepted a reduced premium that reflected her son's removal from the policy.[6]

The district court did not err in concluding that the party opposing a motion for summary judgment may not rest on mere allegations or denials in the pleadings, but must set forth by affidavits or otherwise some specific facts demonstrating a genuine material dispute. *See* Fed.R.Civ.P. 56(e). Accordingly, we cannot accept Mr. Alexander's submission that there was a material dispute over whether Ted Seifert was a named-insured on April 6, 1985.

### D. *Resident Status Under the Erie Policy*

■ Mr. Alexander next argues that the district court erred in finding, as a matter of law, that Ted Seifert was not a resident of his mother's household on April 6, 1985, for purposes of the Erie policy. Specifically, Mr. Alexander claims that, under Indiana law, domicile is the correct test for residency. For this proposition, he relies primarily upon *State Election Board v. Bayh*, 521 N.E.2d 1313 (Ind.1988). In *Bayh*, the Indiana Supreme Court found

that for purposes of state guaranteed political rights and privileges, residency is coterminous with "domicile." *Id.* at 1317. However, we believe that other Indiana authority, which deals more directly with the issue at hand, is more pertinent to our resolution of the matter before us. The Indiana courts have considered the definition of resident three times in the context of automobile insurance policies, twice after *Bayh*. Significantly, none of the Indiana cases directly on point uses a domicile test.[7] We now turn to that body of case law to determine whether the district court properly granted summary judgment in this case.

The first case in Indiana to address this issue was *Allstate Insurance Company v. Neumann*, 435 N.E.2d 591 (Ind.Ct.App. 1982). In *Neumann*, the court began by laying out the general propositions that:

> the term "resident" ha[s] no fixed or precise meaning in the law.... [T]o determine the meaning of the term "resident" we must look to both the context in which the term is used and the purpose of the statute (or instrument) in which it is employed.

*Id.* at 593. In *Neumann*, the appellate court upheld the trial court's determination

---

must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection.").

**6.** Ms. Seifert also admitted that she intended to have her son's name removed to reduce her annual premium. Prior to Mr. Alexander's present action, Erie interviewed Ms. Seifert concerning the residence of her son, Ted Seifert. The text of that interview was before the district court, apparently without objection. The following exchange occurred:

ERIE: The copy that I am looking at, Jerry, indicated that this particular policy was issued on December 16, 1984. A later copy indicates at about on January 4, 1985, the police [sic] was changed to remove Ted as the principal driver of the 1980 Buick.
SEIFERT: That is correct.
ERIE: And did you cause that to happen?
SEIFERT: Yes I did.
ERIE: Did that happen because Ted no longer lived with you, rather with his father?
SEIFERT: That is correct.
ERIE: Okay.
SEIFERT: And I saw no point in paying those additional premiums when he was not available to drive the car.

ERIE: Exactly. Were you aware of the accident in question shortly after it occurred?
SEIFERT: Yes.
ERIE: Okay, why did you not report that to Erie Insurance Company or your agent?
SEIFERT: Well, Ted was not a member of my household. He was not covered by my car insurance. It never occurred to me to report it.
Defendant's Ex. 0.

**7.** Although we find that *Bayh* is not directly on point, we note that even were we relying upon *Bayh*, our analysis would not end with a determination of legal domicile. We read *Bayh* as consistent with the proposition that residency may be determined differently for different purposes. In *Bayh*, the Indiana Supreme Court looked beyond statements of intent, holding that the question of residency was a *contextual determination* to be made by the trial court *upon a consideration of the individual facts* of any case. *See Johnson v. Payne*, 549 N.E.2d 48, 50 (Ind.Ct. App.1990) (citations omitted) (emphasis added) (specifically rejecting the *Bayh* domicile analysis of residency for purposes of interpreting an automobile insurance policy).

that the plaintiff was not a resident of her boyfriend's household for purposes of automobile insurance coverage. The plaintiff stayed with her boyfriend on the weekends and on occasion during the week, but otherwise maintained separate living quarters. She testified at trial that she considered herself to be living at his house. *Id.* In upholding the disposition, the court reasoned that "[m]ore than physical presence was necessary to make her a resident of the household. There was additionally a subjective element of intent." *Id.* at 594.

The next Indiana decision to address the present issue was *Johnson v. Payne*, 549 N.E.2d 48, 50 (Ind.Ct.App.1990). In *Johnson*, the issue was whether the insured's former spouse, who was involved in an accident while the couple was separated, was a resident for purposes of her automobile insurance policy. *Id.* at 48. The Indiana appellate court found that the plaintiff was not a resident because he did not have unrestricted access to the insured's home and "the insurance contract was created based upon [the insured's] representations that she was the only driver residing in the household and the premium calculated based upon the fact that [she] was separated." *Id.* at 51. Similarly, Ms. Seifert represented to Erie that she was the only driver she wished to be listed on the policy and consequently she benefitted by the reduced premium.

The third and most current Indiana decision on point is *Aetna Casualty & Surety Company v. Crafton*, 551 N.E.2d 893 (Ind. Ct.App.1990). In *Crafton*, the defendant, who was under the joint custody of his divorced parents, was driving his father's car when he was involved in an automobile accident. Aetna sought a declaratory judgment that its policy, covering the defendant's mother's automobile, provided no coverage for the accident. The defendant in *Crafton* lived with his father, except for overnight weekend visits with his mother approximately once every six weeks. The state trial court found that the defendant was a resident of his mother's household for purposes of her automobile insurance policy. However, the Indiana appellate court reversed the decision, finding that

the mother's policy did not provide coverage because the defendant was residing with his father and his "physical presence in [his mother's house] was minimal ... [and] his visits were sporadic and irregular." *Id.* at 895.

■ On the basis of these cases, the district court in the present action concluded that, for purposes of determining the issue of residency in automobile insurance policies, Indiana considers the following factors:

> (1) physical presence (intending to have a fixed abode for the time being, to dwell under the same roof and compose a family); (2) the unrestricted access to the insured's home and its contents; (3) the intent of the contracting parties to provide coverage; and (4) the totality of the evidence.

Mem.Op. at 19. We believe that the district court's approach is an accurate distillation of the Indiana authorities, although we emphasize that the cases also make it clear that these factors are conceptually and practically inter-related.

In examining these criteria, we conclude that there is no genuine issue of triable fact to preclude summary judgment. Certainly, there is no genuine issue as to whether, during the time period in question, Seifert was present under his mother's roof so as to manifest the intent to compose a single family unit. The evidence of record establishes that Seifert was, at the time in question, living with his father. Nor can we say that, at the time in question, Seifert had the sort of unrestricted access to his mother's home that is contemplated by the Indiana cases. In *Neumann*, the court stressed the importance of assessing individual facts in the context of the entire record. We believe that under this approach we must assess the question of access in relation to the overall living arrangement of the parties. Many close relations and, indeed, close friends would no doubt consider that they would have "unlimited access" to the home of each other if the need arose. However, circumstances may make it quite clear that

there is no such present need because of the activities of the individuals. In such a situation, it is not reasonable to conclude that the parties contemplate that their abstract "welcome" amounts to an agreement to insure the vehicular activity of the other person.

■ In affirming the grant of summary judgment in this case, we are aware that summary judgment ought to be used sparingly and with great caution in cases such as this one where subjective intent is a factor in the determination.[8] However, the use of summary judgment is not inappropriate where the undisputed facts make the outcome clear. The district court was not obliged to entertain a "metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Mr. Alexander invites our attention to *Blanchard v. Peerless Insurance Company*, 958 F.2d 483 (1st Cir.1992) as support for the proposition that a grant of summary judgment is rarely appropriate when a "totality of the circumstances" test such as that used by the district court is applied. However, as we have just discussed, the Indiana courts, which are the final arbiters of Indiana law, have spoken directly to the issue presented on at least three separate occasions.[9] After a careful analysis of the present facts under these controlling Indiana cases, we conclude that the district court did not make improper factual determinations that should have been permitted to go to the jury. Seifert simply did not maintain the sort of presence at his mother's home that, under the teachings of *Neumann, Johnson*, and *Crafton*, support a finding that it was his "residence." A totality of the circumstances test does not preclude summary judgment when the evidence presented to the district court is not sufficient to permit a jury, applying Indiana law, to conclude that Seifert was a

resident under the Erie policy on April 6, 1985. "A genuine issue of material fact exists only where there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1329 (7th Cir.1989) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511).

### Conclusion

The judgment of the district court is affirmed.

AFFIRMED.

---

**8.** The Indiana cases make clear that the intent of the person whose residence must be ascertained is an element of the determination. *Johnson*, 549 N.E.2d at 50.

**9.** Without reason to believe that the state courts of Indiana would reinterpret their state laws,

the foreign authorities which Mr. Alexander cites are presently of no incident. *See Bandag, Inc. v. Nat'l Acceptance Co. of Am.*, 855 F.2d 491, 493 (7th Cir.1988); *Indianapolis Airport Auth. v. American Airlines, Inc.*, 733 F.2d 1262, 1272 (7th Cir.1984).