**INDIANA FARMERS MUTUAL INSURANCE GROUP,**
Appellant–Defendant,

v.

**Todd BLASKIE and Christine Blaskie,**
Appellees–Plaintiffs,

and

Lynn Miller, Appellee–Defendant.

No. 57A03–9906–CV–219.

Court of Appeals of Indiana.

April 17, 2000.

Branch R. Lew, Brian L. England, Fort Wayne, Indiana, Attorneys for Appellant.

Earl Raskosky, Fort Wayne, Indiana, Attorney for Appellees Todd and Christine Blaskie.

## OPINION

MATTINGLY, Judge

Indiana Farmers Mutual Insurance Group (Insurer) appeals a summary judgment for Todd and Christine Blaskie (collectively "Blaskie") and the denial of its own motion for summary judgment. Insurer raises a single issue, which we restate as whether the trial court properly found that Lynn Miller, the son of its insured, was a "resident" of the insured's household and therefore covered to the full policy limits of the insured's policy.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On April 14, 1994, a car driven by Todd Blaskie collided with a car driven by Lynn Miller. Lynn's parents, Rex and Janet Miller, owned the car and held an auto insurance policy issued by Insurer. Blaskie's initial complaint asserted that Lynn Miller was "in the state of drunkenness," (R. at 5), at the time of the accident and thus was negligent. The complaint also asserted that Rex Miller negligently entrusted his vehicle to Lynn Miller. The complaint was amended to add Insurer as a defendant in a declaratory judgment action to determine the extent to which Lynn was covered by his parents' automobile insurance policy.

Lynn was not a named insured. However, the policy provided coverage at the policy limits for any "family member."

Family member was defined in the policy as "a person related to you by blood, marriage or adoption who is a resident of **your** household." (R. at 64) (emphasis in original). The policy limits in this case were $100,000/$300,000. However, if Lynn were not a "family member" and were instead merely a permissive user, the policy limited Insurer's liability to "the minimum requirements for the financial responsibility law of the jurisdiction in which the **bodily injury**" occurred. (R. at 28.) The minimum requirement for coverage in Indiana is $25,000. The trial court determined Lynn was a resident of the household and thus was a "family member," and granted Blaskie's motion for summary judgment.

Lynn was thirty-seven years old at the time of the accident. He graduated from high school in 1981 and married shortly thereafter. He moved away from home and settled in Michigan. He and his wife had a child and were subsequently divorced. Lynn joined the Navy in 1985 and was eventually stationed in San Diego, California. Lynn was still in the Navy at the time of the accident.

Lynn has returned to Indiana while on leave about once every sixteen months. On these visits he has sometimes stayed with his parents and sometimes with relatives other than his parents.[1] The length of these visits has ranged from about ten days to about four weeks. While Lynn is welcome in his parents' home, Lynn and his parents all indicated they did not consider Lynn a resident of the Millers' home. When Lynn stayed with his parents, he kept his clothing in a duffel bag on the porch. He ate some meals and did some laundry there as well. The Millers maintained no bedroom for Lynn, so he slept on a couch when he was there. Lynn has not

1. In his Statement of the Facts, Blaskie states "Whenever [Lynn] has military leave, he returns to Indiana to live with his parents. (R. at 103)," and "While on leave, Lynn stays with his parents in their home." (Br. of Blaskie at 1.) This appears to misstate the record. That page of the record includes the deposition of Rex Miller, and no such statement appears on that page. On the following page of the record, however, Rex Miller states that Lynn "sometimes" stayed with his parents but sometimes stayed with his uncles instead: "So, you know, just—just depends where he was at." (R. at 104.)

paid rent or any other living expenses to his parents and has not received mail at his parents' home. Lynn did not have a key to the house, but could come and go as he pleased because the house was not locked. If he needed a car he had access to his parents' vehicles.

On the date of the collision, Lynn was in Indiana for his grandfather's funeral. He stayed at his parents' house during at least part of the visit. Lynn had borrowed his father's car and was driving it when the collision occurred.

## DISCUSSION

### Standard of Review

■ When reviewing the grant of a summary judgment motion, we apply the same standard applicable in the trial court. Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We do not weigh the evidence, but will consider the facts in the light most favorable to the non-moving party. *Grose v. Bow Lanes, Inc.*, 661 N.E.2d 1220, 1224 (Ind.Ct.App.1996). We must reverse the grant of a summary judgment motion if the record discloses an incorrect application of the law to those facts. *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

On appeal from a grant of summary judgment, the burden is on the appellant to prove the trial court erred in determining there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 813 (Ind.Ct.App.1995). A fact is "material" for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action. *Weida v. Dowden*, 664 N.E.2d 742, 747 (Ind.Ct.App.1996). A factual issue is "genuine" if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Id.*

■ The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.*, 663 N.E.2d 1180, 1183 (Ind.Ct.App.1996).

### Construction of Insurance Policy Provisions

■ In determining residency status under an automobile liability insurance contract, we consider the following factors: 1) whether the claimant maintained a physical presence in the named insured's home; 2) whether he had the subjective intent to reside there; and 3) the nature of his access to the named insured's home and its contents. *Jones v. Western Reserve Group*, 699 N.E.2d 711, 714 (Ind.Ct.App.1998), *reh'g denied, trans. denied*, 714 N.E.2d 169 (Ind.1999). In addition, the fact-finder must consider all of the evidence indicative of the claimant's living habits. These factors should be considered in the context in which the term "resident" is used and the purpose of the instrument in which the term is employed. *Id.*

■ In construing the term "resident" in an insurance policy, we give the term its broad meaning in "extension" cases—i.e., cases that involve the question whether insurance coverage should be extended beyond the named insured. *Aetna Cas. & Sur. Co. v. Crafton*, 551 N.E.2d 893, 895 (Ind.Ct.App.1990). By contrast, we construe the term narrowly in "exclusion" cases. *Id.* In choosing a broad or narrow construction we are "limited to the *reasonable* interpretation of the term as used." *Id.*

### 1. Physical Presence

■ We recently addressed the "physical presence" factor in *Jones*, where we reversed a summary judgment that an accident victim was not a "resident" of the policyholder's household. There Jones, the accident victim, sought coverage as a "resident" under her mother and stepfather's (the Wrights') insurance policy. Jones had moved with the Wrights to Winchester, Indiana. She enrolled in Winchester High School but soon considered quitting because the students were circulating rumors about her. Jones moved into the home of her aunt in Richmond in order to finish high school there. She took some clothing and personal items to Richmond but left some clothes, a stereo, and a television in Winchester. She did not have her own room at the Richmond home. She slept on a couch or on the floor of her cousin's room. Her younger brother started sleeping in her room in the Winchester house, though Jones still stored some personal items in that room. Jones subsequently moved into an apartment in Richmond and three months later moved in with another aunt who lived in Richmond. After seven months there, she moved into an apartment with two high school friends. While she was living in that apartment, Jones was involved in the accident for which insurance coverage was sought. Upon her release from the hospital, she moved back to the Wrights' home in Winchester.

We noted that "the facts appear to weigh against Jones being found a resident of the Wright home in Winchester," 699 N.E.2d at 716; but held that "reasonable persons could draw a contrary conclusion." *Id.* Jones' attempt to move into her own apartment could have been "merely a failed experiment in independence." *Id.*

**2.** This was an appeal from a negative judgment and not from a summary judgment. On appeal from a negative judgment the appellant must establish that the judgment was contrary to law. *Crafton,* 551 N.E.2d at 894. We will set aside a negative judgment as contrary to law only when the evidence is

In *Crafton,* the policyholder's son had an "impromptu" arrangement with his mother regarding his overnight visits to her home. He never stayed more than one night there; the visits were not prearranged or pursuant to any schedule; he stayed there "maybe once every six weeks" or "whenever he want[ed] to"; and he slept in a sleeping bag when he visited. When the mother took out the insurance policy in question, she did not list her son. The son had never driven the mother's automobile. We characterized those facts as "the absence of any evidence that [the son] was a resident of [the mother/policyholder's] household." 551 N.E.2d at 896.

Lynn's absence from the Miller home can hardly be characterized as a "failed experiment in independence" and his physical presence at the Miller home was minimal compared to that of the persons involved in either *Jones* or *Crafton*. Lynn had been living away from the Millers' home for some thirteen years at the time of the accident and had returned to the Millers' household quite infrequently. The facts suggest when Lynn was at the Millers' household his status was that of a temporary visitor rather than that of a resident, as he stored his personal items on the porch, slept on a couch, and did not have a room of his own. The trial court erred to the extent it determined Lynn was a resident based on his physical presence at the Millers' home.

### 2. Subjective Intent

In *Allstate Ins. Co. v. Neumann,* 435 N.E.2d 591, 594 (Ind.Ct.App.1982) we found that the evidence supported the trial court's decision that a policyholder's girlfriend was not a resident of the policyholder's home.[2] The policyholder lived in Elk-

without conflict and all reasonable inferences to be drawn therefrom lead to but one result and the trial court reached a different one. *Id.* at 895. While we decided the trial court's decision was supported by the evidence, we went on to note in *Neumann* that "there existed in the case at bar factual questions con-

hart. His girlfriend attended Ivy Tech in South Bend and had a room at the Y.W.C.A. in South Bend. She spent most weeknights at the Y.W.C.A. and spent weekends at the policyholder's house. She kept clothing at both places and occasionally cooked meals at the policyholder's house.

In *Neumann* the girlfriend had testified at trial that she considered herself to be living at the policyholder's house. However, we noted that the court was faced with a credibility problem concerning the witnesses before it. At trial the policyholder testified he lived alone but then corrected himself to include his girlfriend. Other evidence at trial indicated both she and the policyholder had given statements to the effect that she was not a resident of the policyholder's house. While the evidence of the girlfriend's living habits "was susceptible to the conclusion that she was a resident of [the policyholder's] household, it certainly did not command that conclusion." 435 N.E.2d at 594. So, we upheld the trial court's determination that she was not a resident.

In *Johnson v. Payne*, 549 N.E.2d 48 (Ind.Ct.App.1990), also an appeal from a negative judgment, we affirmed the trial court's decision that a husband who sought coverage under his wife's policy was not a resident of her household. The husband had declared that his subjective intent was to be a resident. But the trial court also noted that 1) the wife had taken out the policy after she and the husband had separated and when she did not intend to reconcile; 2) she petitioned for dissolution of the marriage three weeks after taking out the policy; and 3) she and her husband never reconciled or lived together afterwards. Because those facts supported the trial court's finding that the husband was

not a resident, we held its determination was not clearly erroneous. *Id.* at 51.

In *Crafton*, we found that neither the son's nor the mother's subjective intent supported the notion that the son might have been a resident of the mother's household. The mother and father were divorced. The divorce decree provided for joint custody, but the son stayed at the father's house except for overnight visits at the mother's apartment about once every six weeks "or whenever he wants to." 551 N.E.2d at 896. The mother listed herself only, and not her son, when she took out the insurance policy, and the son had never driven her car.

Lynn and both parents testified as to their subjective belief that Lynn was not a resident of the Millers' home, and the record is devoid of any evidence to contradict those statements of intent. In response, Blaskie characterizes as "self-serving," (Br. of Blaskie at 7), the statements by the Millers that they did not consider Lynn to be a resident of their home, and asserts without further explanation that the "undisputed facts also lead to an inference that [Lynn's] intent was to be a resident of his parents [sic] home." *Id.* at 7.

Because the uncontradicted evidence of subjective intent supports the conclusion that Lynn was not a resident, and because that evidence is consistent with all other evidence in the record, the trial court erred to the extent it determined Lynn was a resident of the Millers' home by virtue of his subjective intent.

3. *Access to Policyholder's Home and Its Contents*

Our decisions have not addressed this factor in detail except to note generally that "inclusion" clauses [3] have the general

---

cerning whether [the girlfriend] was a resident of [the policyholder's] household on the date of the collision." 435 N.E.2d at 594.

3. The clause at issue in the case before us is worded much like the "inclusion" clauses we addressed in *Neumann, Johnson,* and a num-

ber of other decisions. However, we note that the effect of this "limitation" is to shift the burden of risk to the underinsurance policies of the injured parties and not to provide coverage to a person who might not otherwise be covered.

purpose "to provide coverage to persons having unrestricted access to the home and its contents." *Neumann*, 435 N.E.2d at 594; *Johnson*, 549 N.E.2d at 50.

There was evidence that Lynn was free to come and go as he pleased when he visited his parents and that he was permitted to use one of the Millers' cars. Lynn had no key to his parents' house, but the Millers typically did not lock the house. Insurer characterizes this evidence as demonstrating only that Lynn had the same privileges as any other welcome houseguest, and notes that the Millers' failure to lock their house "gave 'unfettered access' to the home and its contents to a mere passerby and would be evidence of the passerby's residence in the household." (Reply Br. of Appellant, Indiana Farmers Mutual Insurance Co. at 6.) We agree, and find that the evidence of Lynn's access viewed in light of the other evidence designated to the trial court does not support the trial court's conclusion that Lynn was a resident of the Millers' home.

### CONCLUSION

The trial court improperly determined Lynn was a resident of the Millers' home. We reverse the summary judgment for Blaskie and remand with instructions to enter partial summary judgment on the residence issue in favor of Insurer.

RILEY, J., and BAILEY, J., concur.